SCHMITZ v. THE ST. LOUIS, IRON MOUNTAIN AND SOUTH-
ERN RAILWAY COMPANY, *Appellant.*

In Banc, December 23, 1893.

1. **Negligence:** RAILROAD: STREET CROSSING.  In an action by a child against a railroad corporation for injuries received by him while attempting to pass between cars of a train occupying a street crossing, evidence that he saw others so cross over before him is admissible on the question of defendant's negligence in starting the train without warning.

2. ——: ——: ——: FLAGMAN.  Evidence that no flagman was present at the time of the accident was admissible to show want of care on defendant's part to prevent accidents.

3. **Practice:** WITNESS: DEPOSITION.  The deposition of a witness not a party to the suit is inadmissible in evidence if he is present in court.

4. **Negligence:** RAILROAD: CARS STANDING ACROSS STREET.  It is negligence on the part of a railroad company to leave its cars standing across a city street with a space of nine inches between them and to close up such space without giving any warning.

5. ——: ——: ——: INEXPERIENCE OF CHILD.  The jury in determining the contributory negligence of a child nine years old in passing between two cars nine inches apart on a street crossing should consider whether by reason of his youth and inexperience he was aware of the dangerous character of his act.

6. ——: DAMAGES: MENTAL ANGUISH.  Where a boy nine years of age is injured by defendant's negligence so as to be a cripple for life, it is proper to allow him for mental anguish arising from consciousness of that fact.

7. ——: ——: INCAPACITY TO EARN LIVELIHOOD.  Where a boy nine years of age is so injured by the negligent act of defendant as to make him a cripple for life, it is proper for the jury in estimating the damages to consider the resulting impairment of capacity to earn a living after the termination of his minority.

8. ——: ——: ——.  Such damages may be allowed though the petition contains no specific averment as to plaintiff's inability to earn a livelihood nor as to what extent it would be impaired after his majority and there is no evidence as to such facts.

9. **Excessive Verdict:** WAIVER. Objection to the amount of the damages found by the jury can not be raised for the first time on appeal.

*Appeal from    Warren    Circuit    Court.*—HON.  W.  W. EDWARDS, Judge.

AFFIRMED.

*H. S. Priest* and  *H. G. Herbel* for appellant.

(1) The court erred in admitting the testimony of plaintiff and his witness, Otten, regarding the action of other persons in crossing the train in question before his injury, and of said witness, Otten, regarding the absence of a flagman at the crossing.   (2) The court erred in excluding the deposition of Frank Furley offered by defendant, which had been taken by plaintiff and filed in this case.  *Schmick v. Noel*, 64 Texas, 406. (3) The court erred in overruling defendant's demurrers to the evidence interposed at the close of plaintiff's case and of the whole case.  *Railroad v. Plaskett*, 26 Pac. Rep. 401; *Corcoran v. Railroad*, 105 Mo. 399; *Ruschenburg v. Railroad*, 19 S. W. Rep. 217; *Hudson v. Railroad*, 101 Mo. 31; *Stilson v. Railroad*, 67 Mo. 671; *Dahlstrom v. Railroad*, 96 Mo. 102; *Andrews v. Railroad*, 45 Am. & Eng. R. R. Cases, 171; *Berg v. Railroad*, 48 N. W. Rep. 691; *Lewis v. Railroad*, 38 Md. 588; *Railroad v. Pinchin*, 31 Am. & Eng. R. R. Cases, 592; *Sherman v. Railroad*, 72 Mo. 66; *Rogers v. Lees*, 21 Atl. Rep. 399; *Waldheier v. Railroad*, 71 Mo. 514; *Kelly v. Barber Co.*, 20 S. W. Rep. 271; *Dlauhi v. Railroad*, 105 Mo. 65.   (4)  The court erred in refusing the instructions asked by defendant. *Stewart v. City*, 79 Mo. 614; *Corcoran v. Railroad*, 105 Mo. 405; *Ruschenburg v. Railroad*, 19 S. W. 217.   (5) The court erred in modifying defendant's first, third and sixth refused instructions, and in giving them to the jury as modified, of its

VOL. 119—17

own motion. (6) The court erred in giving the instructions asked by plaintiff. *Stephens v. Railroad*, 86 Mo. 227; *O'Brien v. Loomis*, 43 Mo. App. 95; *Mateer v. Railroad*, 105 Mo. 354; *Gurley v. Railroad*, 95 Mo. 450; *Zimmerman v. Railroad*, 74 Mo. 91; *Railroad v. Pearcy*, 27 N. E. Rep. 482; *Mellor v. Railroad*, 105 Mo. 462; *Wilburn v. Railroad*, 36 Mo.App. 215. (7) The court erred in overruling defendant's motion for a new trial because of the errors in instructions and the excessiveness of the verdict. *Sharp v. Railroad*, 20 S. W. Rep. 93; *Gurley v. Railroad*, 104 Mo. 233; *Parson's Railroad v. Montgomery*, 26 Pac. Rep. 405.

*S. N. Taylor* for respondent.

(1) The court did not err in permitting plaintiff to prove that others had passed between the cars before he crossed. *Fiedler v. Railroad*, 107 Mo. 645; *Baker v. Railroad*, 98 Mo. 50; *Berger v. Railroad*, 112 Mo. 247. (2) The court did not err in refusing to allow defendant to read the deposition of Frank Furley, because he was present in court at the time the same was offered, ready to be examined, having been duly subpœnaed in the case. Revised Statutes, 4462; *Schmitz v. Railroad*, 46 Mo. App. 392; *Priest v. Way*, 87 Mo. 28. (3) The court did not err in overruling defendant's demurrers to the evidence. On the case made by the evidence, according to the great weight of authority, it was properly submitted to the jury. *Schmidt v. Railroad*, 46 Mo. App. 380; *Hilz v. Railroad*, 101 Mo. 53; *Wilkins v. Railroad*, 101 Mo. 93; *Gurley v. Railroad*, 104 Mo. 227; *Mateer v. Railroad*, 107 Mo. 651; *Grant v. Railroad*, 2 MacArthur, 277; *Ranch v. Lloyd*, 31 Pa. St. 358; *Fitzpatrick v. Railroad*, 35 Md. 32; *McMahon v. Railroad*, 39 Md. 348; Shearm. & Redf. on Neg. [4 Ed.], secs. 92, 479. (4) Moreover, defendant, by offering

evidence after its demurrer was overruled, thereby waived it, and can not now insist that the court erred, even if in fact it did, which I deny. *Bowen v. Railroad*, 95 Mo. 275; *Kelly v .Railroad*, 95 Mo. 279; *McPherson v. Railroad*, 97 Mo. 253; *Hilz v. Railroad*, 101 Mo. 36; (5) Passing through the gap between the cars in a public street, under the circumstances shown in this case, was not negligence *per se*. *Wilkins v. Railroad*, 101 Mo. 93; *Grant v. Railroad*, 2 MacArthur, 277; *Ranch v. Lloyd*, 31 Pa. St. 358; *Fitzpatrick v. Railroad*, 35 Md. 32; *McMahon v. Railroad*, 39 Md. 438; Shearm. & Redf. on Neg. [4 Ed.], secs, 92, 479.; *Schmidt v. Railroad*, 46 Mo. App. 380. (6) Where a boy uses the care reasonably to be expected from one of his years and capacity, he is not guilty of contributory negligence, and whether or not he did use such care is a question for the jury. *Schmitz v. Railroad*, 46 Mo. App. 380; *Kempinger v. Railroad*, 3 Mo. App. 581; *Boland v. Railroad*, 36 Mo. 484; *O'Flaherty v. Railroad*, 45 Mo. 71; *Koons v. Railroad*, 65 Mo. 592; *Donoho v. Iron Works*, 75 Mo 401; *Saare v. Railroad*, 20 Mo. App. 336; *Hudson v. Railroad*, 101 Mo. 33; *Williams v. Railroad*, 96 Mo. 275; *Dowling v. Allen*, 102 Mo. 213; *Railroad v. Gladman*, 15 Wall. 401; *Railroad v. Stout*, 17 Wall. 657; *Railroad v. Fitzsimmons*, 22 Kan. 686; *Hydraulic Co. v. Orr*, 83 Pa. St. 322. (7) Active diligence was due from defendant to use reasonable care and precaution not to injure children on the street, though climbing over its disconnected draw bars. Defendant's instructions refused to state the reverse, and were properly refused. *Wilkins v. Railroad*, 101 Mo. 93; *Hilz v Railroad*, 101 Mo. 53; *Frick v. Railroad*, 75 Mo. 595; s. c., 5 Mo. App. 439; *Gurley v. Railroad*, 104 Mo. 227; *Harlan v. Railroad*, 65 Mo. 24; *Dunkman v. Railroad*, 95 Mo. 232; *Scoville v. Railroad*, 81 Mo. 440; *Kelly v. Railroad*, 75 Mo. 140; *Welsh v. Railroad*, 81 Mo. 466; *Brown v. Railroad*, 50 Mo.

561; *Boland v. Railroad*, 36 Mo. 490. (8) The plaintiff exhibited his crushed foot and ankle to the jury without objection on part of the defendant. It was proper he should do so, because their condition resulting from the injuries, on inspection, were obvious to the jury. It gave the jury a better idea of the terrible injury inflicted upon the plaintiff than words could. *Commonwealth v. Brown*, 14 Gray, 419; *Martin v. Fairbanks*, 11 Pick. 367; *Commonwealth v. Burk*, 5 Cush. 427; *Commonwealth v. Benton*, 12 Allen, 182; 1 Wharton on Evidence, 345; *Mulhaldo v. Railroad*, 30 N. Y. 370; *Scroeder v. Railroad*, 47 Iowa, 375; *Brown v. Swinford*, 44 Wis. 282; *Car Co. v. Parker*, 100 Ind. 181; *Railroad v. Pottsfer*, 141 U. S. 250; *Owens v. Railroad*, 95 Mo. 177. (9) The record shows that justice was done in the finding of the jury and the rendition of the judgment. It is a well settled doctrine in this state, when, from the whole case it appears that justice has been done, though errors were committed which did not materially affect the merits, the court will not disturb the verdict. *Walter v. Cathcart*, 18 Mo. 256; *Smith v. Culligan*, 74 Mo. 388; *Drain v. Railroad*, 86 Mo. 582; *Mauerman v. Railroad*, 41 Mo. 358. Moreover, the statutes make the above rule imperative upon this court. Revised Statutes, 2100, 2302, 2303.

BURGESS, J.—This is a suit by William Schmitz, a minor nine years old, by his next friend, Anton Schmitz, to recover damages for personal injuries caused by the negligence of the defendant in operating its cars upon Lesperance street crossing in the city of St. Louis. It was brought in the circuit court of the city of St. Louis, and thereafter taken by change of venue to Warren county circuit court. It was tried before a jury, and resulted in a verdict and judgment of $5,708 for plaintiff.

The petition, or that part of it which is before this court for consideration, is as follows:

"Now comes the plaintiff and avers that he is a minor, under the age of ten years, and that Anton Schmitz was duly appointed as his next friend to bring this suit, before said suit was brought. That defendant is, and at the time hereinafter mentioned was, a corporation duly organized under the law of the state of Missouri, and engaged in the operation of a railroad, a part of which is in the city of St. Louis.

"Plaintiff further states, that on the twenty-fourth day of August, 1890, and in the daytime, he was going east on a public street in said city known as Lesperance street, where said street is crossed by defendant's railroad in said city; that at said time and place a train of flat cars was standing across said street, which impeded his progress on said street, which train stood there for several minutes and not in motion; the plaintiff, seeing said train standing perfectly still for several minutes, and there being no sign or indication that it was going to move, and seeing many adults and others crossing over the same in said street—between the flat cars—without let or hindrance, or notice not to do so, he undertook to cross over between two such flat cars, in said street, where the other persons upon said street had crossed immediately before him; that he stopped, listened, and looked, before so crossing, and the bell of the locomotive was not rung, the whistle was not sounded, nor was any audible or visible signal given by defendants or its employees to notify plaintiff that said train was about to be thrust backwards, nor was any brakeman in sight of plaintiff, nor was any brakeman on the rear of said train, nor was there any gate or bar across said street where it was crossed by said railroad, and without any notice or warning whatever given on the part of the defendant, the said defendant, violently,

suddenly, carelessly and negligently caused the engine, propelled by steam power, to jam the cars of said train together, thereby breaking and crushing the bones of plaintiff's foot and ankle between the bumpers of two of said cars while he was in the act of crossing as aforesaid, and in consequence he was injured and maimed for life, and caused to suffer great physical and mental pain and agony.

"Plaintiff further states, that considering his age and intelligence, he was at the time exercising that degree of care and diligence which could be expected of him, or that was due from one of his age, and that the immediate cause of said injury to him was the carelessness and negligence of the defendant in failing to do its duty in protecting persons, and especially children of immature judgment, in the lawful use of said public street from injury by its said cars, that the car so thrust backward which crushed plaintiff's foot, was attached to several other cars and a locomotive, constituting a freight train, which at the time of said injuries, was propelled backward suddenly and violently by steam power. Wherefore plaintiff avers that he has been injured and sustained damages in the sum of twenty thousand dollars ($20,000) for which, with cost of suit, he prays judgment."

The answer was a general denial and plea of contributory negligence on plaintiff's part in attempting to cross the track at the time, place and manner he did. Plaintiff replied, denying the new matter in the answer.

The facts are, that on August 24, 1890, William Schmitz, aged nine years and two months, with three other boys, went east on Lesperance street, a public street in the city of St. Louis, and on arriving at the place where defendant's railroad tracks cross the street, they found their way impeded by two cars, the bumpers of which were disconnected, leaving an opening of

about nine inches between them.   They saw about fifty to seventy-five persons cross the track upon which said cars were standing, in a line near the center of the most traveled part of the street, some of whom passed over, and some under, the disconnected bumpers and some passed through the nine inch space between them sideways, while some others climbed over the car, it being flat car.   After all of these had passed over, plaintiff and his then comrades still stood, looked, listened and waited for the cars to separate further, thus widening the gap.   After thus waiting for the cars to be moved from the street crossing, five to fifteen minutes, during which time there was no flagman, or other employee of defendant in sight, and neither seeing nor hearing any indications that the cars would be moved, and being anxious to reach the other side of the railroad track, one of these boys crossed the track by passing through the disconnected bumpers, and then another climbed over said bumpers, and plaintiff endeavored to follow him, and in doing so put one foot on one of the bumpers and raised his body, and as his other foot was swinging through between the disconnected bumpers, the defendant's employees in charge of the engine caused it suddenly to jam the bumpers of the cars together, thereby catching plaintiff's foot and ankle between said disconnected bumpers, crushing the bones and muscles.   The flagman was not in sight.

The evidence shows that the plaintiff did not think that the cars would be moved without his being notified, and did not apprehend any danger in endeavoring to pass over the bumpers as he did on this occasion. It also shows that he suffered intense physical pain for many months after his injury, and that he is crippled for life.   The extent of his injuries was testified to by Dr. Faber, and his foot and ankle, as it appeared at the trial, was exhibited to the jury without objection.

During the course of the trial, plaintiff was permitted, against defendant's objections, to prove that a large number of persons had crossed the train before he did, and that there was no watchman at the crossing to warn them of danger. The defendant saved its exceptions to these rulings of the court.

The testimony adduced by the defendant tended to prove that a few minutes before the accident there was a train of cars standing north of the crossing; that defendant's watchman, John Misch, was standing on the west side of the track on which plaintiff was injured; that he saw several cars moving northward on the track toward the crossing at a slow rate of speed; that he crossed over this track to the east side just a moment previous to the closing of the crossing; that he did not see plaintiff or his companions anywhere near the crossing at that time, nor did he see them there at all until after he heard the cry of pain caused by the crushing of plaintiff's foot; that the accident happened only a few moments after he had crossed over the track; that he was standing on the next track east of the one on which plaintiff was injured and was within a few feet of him at the time; that there was a train backing northward towards the crossing a few moments before the accident; that the men in charge of this train were coupling up detached sections of cars for the purpose of making up a train; that the car which injured the plaintiff formed a part of one of these detached sections; but the train backing north was not attached to this section and never came in contact therewith, so far as the employees in charge of the train knew; that none of the hands in charge of this train witnessed or knew anything about the accident until after it had happened; that the watchman had been at the crossing all day in the discharge of his duty, and was on the opposite side of the train on the track next to the one on

which the boy was injured, at the time thereof.

The defendant offered in evidence the deposition of Frank Furley, which had been taken by plaintiff and filed in this suit, to which evidence the plaintiff objected, on the ground that the witness was in court, it appearing from the cross-examination of plaintiff's witnesses that deponent had been taken to the court by plaintiff. The court sustained the objection and excluded the deposition, to which ruling and action of the court defendant at the time duly excepted.

Defendant thereupon prayed the court to instruct the jury as follows:

"A. The court instructs the jury that under the pleadings and the evidence the plaintiff cannot recover."

"1. The court instructs the jury that the following are the only grounds of negligence charged in the plaintiff's petition which you can consider under the instructions hereafter given you. *First.* That the bell of the locomotive was not rung or the whistle sounded. *Second.* That plaintiff was not notified of the intention of those in charge of the train to move it backward. *Third.* That no brakeman was on the rear car of said train. *Fourth.* That there was no gate or bar across the street. *Fifth.* That the servants of defendant, without any notice or warning, suddenly, carelessly and negligently caused the engine to jam the cars of the train together, whereby plaintiff's foot was crushed and mashed. You are further instructed that it is admitted by the plaintiff's petition that the cars between which plaintiff was injured were coupled together and plaintiff was injured while attempting to climb between them."

"3. Concerning the charge in plaintiff's petition that the plaintiff was not notified of the intention of

those in charge of the train to move it backwards, you are instructed that the defendant's servants had the right to assume that no person would attempt to climb between the cars of said train and said servants were not bound to give notice to anyone so climbing between said cars unless said servants knew that said person was in between said cars or in the act of climbing over them; and unless you believe from the evidence that some servant engaged with said train actually knew that plaintiff was in the act of climbing between said cars at the time they were moved, then you must find that issue for the defendant."

"6. Concerning the charge of the petition that defendant's servants, without any notice or warning, suddenly, carelessly and negligently caused the engine to jam the cars together, you are instructed that the law does not require any such notice or warning of the defendant's servants under the circumstances in this case unless they actually knew that the plaintiff was between said cars and was in danger of being hurt by such movement of the engine unless you find from the evidence that they did actually know that plaintiff was between said cars and in danger of being hurt by such movement of them, then you must find for the defendant upon this, the last ground charged in said petition."

Which instructions the court refused to give to the jury; to which action and ruling of the court, defendant, at the time duly excepted.

The court then modified defendant's first, third, and sixth "refused" instructions, and, of its own motion, gave the same to the jury as modified, as follows:

"1. The court instructs the jury that the following are the only grounds of negligence charged in plaintiff's petition, which you can consider, under the

instructions hereafter given you. *First.* That the bell of the locomotive was not rung or the whistle sounded. *Second.* That the plaintiff was not notified of the intention of those in charge of the train, to move it backward. *Third.* That no brakeman was on the rear car of said train. *Fourth.* That there was no gate or bar across the street. *Fifth.* That the servants of defendant, without any notice or warning, suddenly, carelessly and negligently, caused the engine to jam the cars of the train together, whereby plaintiff's foot was caught and mashed.''

''3. Concerning the charge in plaintiff's petition that the plaintiff was not notified of the intention of those in charge of the train to move it backward, you are instructed that the defendant's servants had the right to assume that no person would attempt to climb between the cars of said train, and said servants were not bound to give notice to anyone so climbing between said cars, unless said servants knew, or by the exercise of ordinary care might have known, that said person was in between said cars so in the act of climbing over them; and unless you believe from the evidence that some servant engaged with said train actually knew that plaintiff was in the act of climbing between said cars at the time they were moved, then you must find that issue for the defendant.''

''6. Concerning the charge of the petition that defendant's servants without any notice or warning, suddenly, carelessly and negligently caused the engine to jam the cars together, you are instructed that the law does not require any such notice or warning of the defendant's servants, under the circumstances of this case, unless they actually knew. or by exercise of ordinary care might have known, that the plaintiff was between said cars and was in danger of being hurt by such movement of the engine, and unless you find

from the evidence that they did actually know, or by the exercise of ordinary care might have known, that the plaintiff was between said cars and in danger of being hurt by such movement of them, then you will find for the defendant upon this, the last ground charged in said petition.''

To which action of the court, in modifying said instructions and giving them to the jury as modified, defendant at the time duly excepted.

The court, at the instance of the plaintiff, gave the jury the following instructions:

''1. The court instructs the jury that it was the duty of the defendant's flagman, and its agents and servants in management of its locomotive and train under their charge, to exercise reasonable care and precaution to prevent any injury to persons upon the tracks of defendants and any failure on their part to exercise care and precaution would be such negligence as to make the defendant liable for the injuries to plaintiff resulting from such negligence, unless the jury further believes from the evidence that plaintiff was not acting with reasonable care and diligence for one of his age in passing over the cars as he did on the occasion of his injuries; and in passing upon the question as to whether the flagman and agents and servants of the defendant were or were not negligent in conducting and managing the locomotive and train at said crossing, you should take into consideration all the facts and circumstances, as proved by the evidence to have existed at the time when, and the place where, the injuries occurred; and you should give to each fact and circumstance and to the testimony of each witness such weight only as you may deem such fact, circumstance or testimony entitled to in connection with all the evidence in the case.

''2. By the term negligence, as used in these

instructions, is meant the want of that degree of care that any ordinarily prudent person would have exercised under the same or similar circumstances.

"3. The court further instructs the jury that though they may believe from the evidence that it would have been negligence in an adult to have climbed over the draw-bars of the cars, as the plaintiff did on this occasion of his injuries, still if the jury find that, by reason of his youth and inexperience, he was not aware of the danger to which he was exposed in doing so, then the jury will take this into consideration in passing upon the question of plaintiff's alleged contributory negligence.

"4. The jury are instructed: That if you find for the plaintiff you will, in assessing the damages, take into consideration the physical condition he was in before the injuries in question, the physical pain and mental anguish he has suffered occasioned by said injuries, and the physical pain and mental anguish, if any, you believe from the evidence he is likely to suffer in the future because of said injuries; and in addition to this, you may also consider to what extent, if any, plaintiff's capacity for earning a livelihood, after his majority, will be impaired by said injuries, and you will return a verdict for him in such sum as you believe to be just and reasonable, not exceeding twenty thousand dollars."

To which action of the court in giving said instructions to the jury, and each of them, the defendant, at the time, duly excepted.

The court, at the instance of the defendant, gave the jury the following instructions:

"2. Concerning the failure of the defendant to ring the bell or sound the whistle as charged in the petition, you are instructed that under the circumstances in this case the defendant's servants were not

bound to do either and your verdict must be for the defendant as to that ground of negligence."

"4. Concerning the charge in plaintiff's petition that there was no gate or bar across the street, you are instructed that there is no evidence to support that ground and you must find for the defendant on that charge.

"Concerning the charge in the petition that no brakeman was stationed on the rear end of the train, you are instructed that under the evidence in this case the defendant was not required to have a brakeman so stationed, and you must find for the defendant upon this charge of the petition."

"7. The jury are instructed that it was an act of gross carelessness to have climbed between the cars as the plaintiff did, if he was of sufficient years and understanding to have appreciated the danger of so doing; and whether he did understand and appreciate the danger of so doing is a matter for you to determine; and in determining this you may take into consideration his admissions and statements while testifying in this case, and if you find him of sufficient understanding to appreciate the danger he might encounter in passing between said cars, then you must, upon this finding alone, return a verdict for the defendant."

It is claimed by defendant that the court committed error in admitting the testimony of plaintiff and his witness, Otten, regarding the action of other persons in crossing the cars which caused the injury at the time of or immediately preceding the accident, and of said witness Otten with reference to the absence of a flagman at the crossing at the time. It was held by this court in the case of *Burger v. Railroad* (112 Mo. 238), which was an action by a child for injuries sustained at the crossing in attempting to cross through a train standing across the street, that evidence that

plaintiff saw others cross before him was admissible on the issue of defendant's negligence in starting the train without warning. Evidence of a similar character was admitted without objection in the cases of *Fiedler v. Railroad*, 107 Mo. 645; *Gurley v. Railroad*, 104 Mo. 215; *Brown v. Railroad*, 50 Mo. 461; *Stillson v. Railroad*, 67 Mo. 672; *Railroad v. Layer*, 3 Cent. Rep. 381, and *Thurber v. Railroad*, 60 N. Y. 326. Persons and especially children are naturally inclined to do whatever they may see others do.

Nor was it error in permitting the witness Otten to testify that no flagman was present at the time of the accident, as this evidence was admissible as tending to show negligence on the part of the defendant and the want of care and caution in order to prevent accidents at this crossing.

It was also contended by defendant that the court erred in excluding the deposition of Frank Furley offered by defendant, which had been taken by the plaintiff and filed in this case, and reliance is placed upon the case of *Schmick v. Noel*, 64 Texas, 406, as sustaining this position. An examination of that case will show that the deposition which was read was that of the plaintiff in the suit, and even in that case the court held that it was a matter of practice resting largely in the discretion of the trial court. The rule in this state, however, is that declarations of a party to a suit contained in his deposition taken by the other party may be read in evidence against him in the same case, although he is present at the trial. *Bogie v. Nolan*, 96 Mo. 85. But section 4461, Revised Statutes, 1889, makes no provision for the reading of the deposition of a witness not a party to the suit who is present at the time of trial and excludes, by implication at least, the right to do so. *Schmitz v. Railroad*, 46 Mo. App. 391.

The next contention is, that the demurrer to plain-

tiff's evidence should have been sustained, because as soon as plaintiff touched or stepped upon defendant's train he became a trespasser and as such defendant owed him no duty, and he was entitled to no protection save against willful injury. The plaintiff had the same right that the defendant had to the use of the highway, and he might well assume that if any immediate movement of the cars was made at all, some signal would be given before the movement was made or that the cars would be pulled farther apart so as to relieve the street of the obstruction. While it is true that the duty of giving the statutory signals of ringing the bell and sounding the whistle has no application to one situated as plaintiff was in between two cars, but was intended to give warning to persons about to cross the track of the approach of a train, yet, as there was a space of at least nine inches open between the cars, through which a large number of persons had been passing, and others were climbing over couplings between the cars, it was a question whether it was not the duty, under the circumstances, of those in charge of the train to give some kind of warning of their intention to move, in order thereby to prevent injury to persons who might be passing between or over the cars. *Burger v. Railroad*, 112 Mo. 238; *Barkley v. Railroad*, 96 Mo. 378; *Railroad v. Layer*, 3 Cent. Rep. 381.

That it was negligence in defendant to leave its cars standing across the street in a populous city where many pedestrians were known to be in the habit of crossing with a space at least nine inches between the draw heads of the cars as if to invite persons who could do so to pass between them, there can be no question, and if without any warning it closed up the space between the cars by reason of which plaintiff was injured without any fault or negligence on his part

contributing directly thereto the defendant should be held liable. It was the duty of the defendant's servants and employees to know the condition of the cars at the crossing, and to provide against any accident that might be occasioned by their movement. In the case of *Wilkins v. Railroad*, 101 Mo. 93, it appears that the plaintiff's husband was killed at the same crossing. The deceased undertook to pass between the cars standing about two feet apart, and by the sudden backward movement of the train made without any warning, he was crushed between the cars and injured, from the effect of which injury he subsequently died. This court in that case said: "This movement is said to have been made with the object of pushing the loose train of several cars close together toward the north, but as it was evident that an opening for the purpose of clearing the street was to have been made, a forward movement of the engine and train of eleven cars was much more likely to be anticipated by a looker on, than the movement that was actually made. There was evidence that no bell was rung or whistle sounded before the movement of the train in question. Deceased might rightly assume that some such signal would be given before the movement was made."

So in the case of *Gurley v. Railroad*, 104 Mo. 211, it appears that the plaintiff was passing over a footway leading through the defendant's yards and over its tracks, and where there was not a public street or highway, but the railroad company had permitted persons to use it in passing to and from the depot. Across this path there was a small space about one foot in width between two cars. The plaintiff, in attempting to pass through this opening, by a sudden movement of the cars was crushed between them and injured.

VOL. 119—18

This court held that no negligence could be attributed to the railroad company because it was under no legal obligation to notify persons of the movements of its cars at that point. The decision was bottomed on the fact that the foot path was not a public highway, and that plaintiff's use of it was merely that of a licensee. The court said, GANTT, J., delivering the opinion: "The relation of the plaintiff and defendant must be kept in view. This was not a public crossing. If it had been so, defendant would have owed plaintiff a positive legal duty; but, being a mere private crossing, and plaintiff being a *licensee only*, defendant was bound not to recklessly injure plaintiff."

While there was no statutory duty imposed on defendant to either ring the bell on the engine or sound the whistle before moving its train, under the circumstances which existed in the case at bar at the time of the accident, it was, owing to the dangerous character of its machinery, the time and place where the injury occurred, the duty of its flagman and its agents and servants in the management of its cars under their charge, to exercise at least reasonable and ordinary care and caution to prevent injury to persons crossing its tracks.

If, then, the defendant was guilty of negligence which caused the injury, and plaintiff was at the time in the exercise of due care for one of his age and intelligence, and without fault contributing directly thereto, the defendant is liable. These questions were for the consideration of the jury under the instructions of the court, as the evidence was ample upon which to predicate them. It necessarily follows that there was no error in refusing defendant's instructions in the nature of demurrers to the evidence.

At the instance of defendant, the court instructed the jury that defendant's servants were not bound

to ring the bell or sound the whistle; that there was no evidence that there was no gate or bar across the street; and that defendant was not required, under the evidence in this case, to have a brakeman on the rear end of the train at the time of the accident; and that for these reasons, also, the demurrers to the evidence should have been sustained as there was then nothing left in the petition or evidence upon which the plaintiff could recover. As to whether the defendant's servants were guilty of negligence in the management of the train which caused the injuries, under the circumstances as disclosed by the evidence, aside from the failure to ring the bell or sound the whistle, in the absence of any evidence that there was no bar across the street and no brakeman on the rear end of the cars, was also a question for the jury under the instructions of the court.

Whatever conflict, if any, there was between plaintiff's first instruction and the one numbered 2 given at the request of the defendant, that defendant was not bound to ring the bell or sound the whistle before moving its cars, was, under the circumstances in this case, an error committed by the court at the instance of defendant and he will not now be heard to complain of an erroneous instruction given at his request. *Alexander v. Clark*, 83 Mo. 482; *Flowers v. Helen*, 29 Mo. 324. While the failure to do so could not be made a statutory cause of action, it was a matter for the jury to take into consideration in determining whether defendant's servants and employees were in the exercise of due care and caution in moving its cars. *Wilkins v. Railroad*, 101 Mo. 93. It necessarily follows that there was no error committed by the court in modifying defendant's refused instructions and in giving them as modified, as the defendant asked and the court gave substantially the same instructions at the close of the

evidence.

Another contention is, that the instructions given for plaintiff were erroneous and should have been refused. Plaintiff's first instruction seems to assume that it was the duty of defendant to keep a flagman at this crossing and at first impression is objectionable for that reason, as the statute imposes no such duty; but as the evidence clearly shows that defendant did have a flagman at the crossing to warn persons about to cross the track of impending danger, it is somewhat difficult to conceive how the defendant could have been prejudiced or the jury misled by reason thereof. Taken as a whole, it is, we think, not vulnerable to the objection urged against it. Nor is the instruction in fact in conflict with defendant's instructions which eliminated from the consideration of the jury all the acts of specific negligence which were alleged in the petition as statutory causes of action, and left only the general allegation of negligence in the management of the train by defendant's servants and agents. Omitting and leaving out all the specific acts of negligence, the petition contains all the necessary allegations to constitute a cause of action at common law and we think is good after verdict. No objection was taken to it either by motion to strike out any part of it, or by demurrer, or by motion to make it more definite and certain.

We see no objection to the third instruction given on behalf of the plaintiff. It simply tells the jury that if, by reason of the youth and inexperience of the plaintiff, he was not aware of the danger to which he was exposed in crossing between the cars, they will take this into consideration in passing upon the question as to whether or not he was guilty of contributory negligence. This we understand to be the law as uniformly announced by this court.

Next, the instruction on the measure of damages is challenged as erroneous: *First*, in assuming that plaintiff suffered physical pain and mental anguish. Counsel for defendant concede that plaintiff suffered physical pain, but deny that one of his age could be capable of suffering mental anguish. That pain would necessarily ensue from any such injury as plaintiff sustained, can not be denied and may well be assumed. Mental anguish may be properly said to be, in this case, grief and sorrow by plaintiff over the loss of the use of his limb and becoming a cripple for life; and that a boy nine years of age may ordinarily be capable of appreciating the consequences of such an injury, we think too clear for argument. There was no prejudicial error, therefore, in assuming, as the instruction did, that the plaintiff suffered physical pain and mental anguish. The physician who attended him testified that he would be a cripple for life.

"The general rule is that 'pain of mind, when connected with bodily injury, is the subject of damages; but it must be so connected in order to be included in the estimate, unless the injury is accompanied by circumstances of malice, insult or inhumanity.' " *Trigg v. Railroad*, 74 Mo. 147, and authorities cited.

Another objection urged against this instruction is because it tells the jury that in estimating the damages, if they find for plaintiff, in addition to physical pain and mental anguish, they will consider to what extent, if any, plaintiff's capacity for earning a livelihood, after his majority, will be impaired. It will be observed that this is not a claim for damages for loss of services, but because of his inability to earn a livelihood after his majority by reason of the injury.

The petition contains no specific allegation with reference to plaintiff's inability to earn a livelihood, or to what extent it would likely be impaired after his arrival

at the age of twenty-one years, nor was there any evidence with regard thereto further than that the evidence shows the injury to be permanent and the plaintiff a cripple for life.   In the case of *Rosenkranz v. Railroad*, 108 Mo. 9, MACFARLANE, J., in speaking for the court says; "It is well settled that prospective damage to adults, on account of impairment of earning capacity in the future, is a proper element of damages in cases of personal injuries. *Whalen v. Railroad*, 60 Mo. 323; *Pry v. Railroad*, 73 Mo. 124; 2 Sedg. on Dam.[8 Ed.], sec. 485. Ordinarily, damages will not be awarded to compensate for losses not yet experienced on mere conjectural possibility that such loss will occur.   In the case of an adult, proof should be made of 'previous physical condition and ability to labor, or follow his usual avocation, as well as his condition since the injury, to enable the jury to properly find the pecuniary damage.' 5 Am. & Eng. Enclyclopædia of Law, 41, and authorities cited.   What may or may not be done by anyone in the future depends upon so many contingencies that prospective loss of earnings can not be susceptible of direct and conclusive proof, even in case of adults. Nevertheless, as he has been seen, such damages are uniformly allowed.   The impairment of the earning capacity of one in his infancy is as great a damage to him as though he had not been injured until the day he had reached his majority.   That he would have an equal right to compensation logically follows.   That plaintiff had never earned anything, and what his ability to labor or his capacity for earning money in business pursuits will be in the future, no one can tell with any certainty.   It is properly held in such case, in the absence of the existence of direct evidence, that much must be left to the judgment, common experience and 'enlightened conscience of the jurors, guided by the facts and circumstances in the case.' "

It follows as a necessary consequence if such damage was not susceptible of proof, that it was not necessary that the petition should contain specific allegation in regard thereto. The jury saw the injured limb, heard the attending physician testify that the injury was permanent, and that the plaintiff would be a cripple for life, and they were as well prepared to judge from observation of the future ability of plaintiff to earn a livelihood after he arrived at the age of maturity as anyone else.

The instruction, which was condemned in the case of *Wilburn v. Railroad* 36 Mo. App. 215, concluded as follows: "And for such other causes as would be just and proper." This instruction, as was said by the court, was palpably erroneous, and gave the jury no criterion whatever by which to estimate the damages, and is unlike the instruction given in the case at bar.

And finally, it is contended that this instruction is erroneous in not confining the jury to the evidence in assessing the damages. The instruction, after specifying what the jury might take into consideration in estimating the damages, concluded as follows:

"And you will return a verdict for him in such sum as you believe to be just and reasonable, not exceeding twenty thousand dollars." This part of the instruction taken alone would, of course, be objectionable for the reason that it is too general and gives the jury no rule by which to estimate the damages; but when the instruction is read altogether, as it should be, no such objection could be urged against it. *Haniford v. Kansas City*, 103 Mo. 172. After telling the jury the facts that they must take into consideration in estimating the damages, it concludes as above indicated, and certainly confined the inquiry and damages to the facts mentioned.

No objection was raised in the court below as to the

amount of damages allowed by the jury, and that question can not now be raised in this court for the first time.

As there does not appear to have been any error committed in the trial of the cause which would justify a reversal of it, the judgment will be affirmed and it is so ordered. All concur except SHERWOOD, J., who dissents, and BARCLAY, J., absent.