St. Louis Trust Co. v. Murmann.

ST. LOUIS TRUST COMPANY, Guardian of BENJ. B. HODGES, Appellant, v. GEORGE MURMANN et al., Respondents.

St. Louis Court of Appeals, December 3, 1901.

1. Petition: PLEADING. The direct consequence of a wrongful act, either expected or unexpected, following as a natural result of the wrongful act, has always been the subject of compensation and need not be specially pleaded.

2. ———: ———: EVIDENCE. In the case at bar, the court did not err in the admission of the evidence in respect to the epileptic condition of plaintiff before and at the time of the assault, and the evidence tending to prove that the assault may have aggravated the disease, although it was not pleaded that plaintiff was in an epileptic condition before and at the time.

3. ———: ———; ———: INSTRUCTION: DAMAGES. And while the instruction in the case at bar should have been more specific in directing the attention of the jury to this element of damages, it in effect did authorize the jury to consider the evidence in respect to the epileptic condition of plaintiff in estimating the damages.

4. Verdict, when not to be set aside: PRACTICE, TRIAL: PRACTICE, APPELLATE. An appellate court will not interfere with the discretion of the trial court in setting aside a verdict, unless it satisfactorily appears that such discretion was arbitrarily and unreasonably exercised.

St. Louis Trust Co. v. Murmann.

Appeal from St. Louis City Circuit Court.—*Hon. Franklin Ferris,* Judge.

AFFIRMED.

*Geo. W. Taussig, H. D. McCorkle* and *P. W. Haberman* for appellant.

(1) In Tycon v. Booth (verdict $5,875), the court, after stating that there was no legal justification for defendant's acts, that the murderous assault was "palpably and grossly out of all proportion to the exigency," said: "If the plaintiff became subject to fits after the shooting, and if they were a part of the result of the injury, the plaintiff was entitled to recover for such damage, without specially alleging it, as well as for the pain and disability which followed the injury." (2) In Keen v. Schnedler, 92 Mo. 516, an erroneous instruction told the jury that the case involved the determination of the true location of a certain boundary line. The Supreme Court said that while it was erroneous, the real question was put to the jury on fair instructions, and "a new trial ought not to be awarded because it was given, for it worked no harm." (3) In Crews v. Lackland, 67 Mo. 619, the instruction failed to limit the amount recoverable to the amount sued for. The court said: "We mention this error merely to condémn it; it has become a harmless one now in consequence of a remittitur." Chambers v. Benoist, 25 Mo. App. 520; Deering v. Collins, 38 Mo. App. 80; Brooks v. Railroad, 35 Mo. App. 571.

*Frank A. C. MacManus* for respondent.

(1) The order of the circuit court sustains the motion for a new trial on three specific grounds: First. "That

the amount of the verdict was excessive." This proposition is seemingly beyond contention. The question whether it was or was not excessive, incorporates also the question whether or not the verdict was against the "evidence" and the "weight of the evidence." These questions are always addressed to the sound discretion of the trial court. The Court of Appeals and the Supreme Court have often held that they will not revise the discretion in the trial court in granting a new trial, except in cases "free from doubt." Ittner v. Hughes, 133 Mo. 694. The action of the court will not be disturbed if there was a substantial conflict in the testimony. Baughman v. Fulton, 139 Mo. 557; Van Lieu v. Barrett Beverage Co., 144 Mo. 509; Milling Co. v. Boggess, 80 Mo. App. 299; Bank v. Wood, 124 Mo. 72; Kungel v. Stephens, 155 Mo. 280; Bank v. Huters, 87 Mo. App. 538. (2) Admitting, for the sole purpose of argument, that some judgment should be given for plaintiff, what portion of the evidence develops anything that would warrant other than nominal damages? No specific physical injuries were proved to have resulted from any particular act of either of the defendants, and the petition reads: "thereby inflicting serious and permanent injuries to plaintiff's body and his right eye." The evidence is silent as to specific injuries. (3) A jury may infer mental pain from the inevitable physical pain, on the known and experienced connection between the facts proved and the facts in controversy. Cook v. Railroad, 19 Mo. App. 329. But epilepsy existing from infancy, is not allied to, or in any manner connected with the allegations in the petition, and no specific wound or special injury is mentioned in evidence— in their hulabaloo on the "bloody face" question, the plaintiff failed to prove specifically the cause of it; the defense made no such omission. (4) The court erred in admitting "evidence of the mental condition of Hodges under the allegations of the petition."

BLAND, P. J.—The suit is to recover five thousand dollars compensatory and five thousand dollars punitive damages for assault and battery, alleged to have been committed on plaintiff Hodges by the defendants, in the city of St. Louis on the eleventh day of April, 1895. Pending the suit Hodges was adjudged insane and was committed to the St. Louis Insane Asylum. The St. Louis Trust Company was appointed his guardian, and thereafter the suit was prosecuted by it as such guardian.

The jury found for plaintiff and assessed his compensatory damages at four thousand dollars, but awarded no punitive damages. A motion for a new trial was filed by defendants and sustained by the court, on the grounds that "the amount of the verdict was excessive, and on the further ground that the court erred in admitting evidence of the mental anguish of Hodges under the allegations of the petition, and also in its instruction as to the measure of damages."

From this order plaintiff appealed.

The damage as laid in the petition is as follows: Plaintiff now says that by reason of the assault he has suffered great physical pain and mental anguish; that his injuries are serious and permanent, and that the actual damage sustained by plaintiff amounts to the sum of five thousand dollars, and that he claims punitive damages in the amount of five thousand dollars."

The instruction on the measure of compensatory damages is as follows:

"If the jury finds for plaintiff, you will, in assessing his compensatory damages, consider the injury sustained by him, if any. The physical pain and mental anguish suffered by him, if any, together with all the facts and circumstances in evidence and assess his damages at such sum as from the evidence you may deem proper, not exceeding ten thousand dollars."

The evidence most favorable to plaintiff, in respect to the physical injury, is, that the defendants struck and beat him in the face with their fists; that his head was struck against a telegraph pole and that his eyes were blackened and his face covered with blood. There is no evidence of any permanent or serious physical injury; but over the objection of the defendants, it was shown in evidence that Hodges was an epileptic and that from childhood he had been in this condition, and that he was a somnambulist and had previous to the assault, been in a hospital and undergone an operation to relieve him of his epileptic condition; that while in the hospital he was violent at times, and had to be strapped down; that after he left the hospital, he procured a strap to confine himself when he went to bed to prevent his getting up in a somnambulistic and epileptic condition and injuring himself.

The expert evidence was that epilepsy is a progressive disease and usually terminates in insanity. Dr. Edward C. Runge testified on the part of the plaintiff, that he was superintendent of the city insane asylum; that Hodges had been confined in the asylum since May, 1897, and that his disease was epilepsy. Of this witness the following hypothetical question was asked: "In case a patient like Hodges should have experienced, say in April, 1895, an assault, in the course of which his head was struck against a post or pole, what would be the effect of such an experience upon a person of his physical temperament?" The witness answered: "I am certain that an injury of that kind would almost be bound to have an aggravating effect upon his condition." A similar hypothetical question, with the addition of a beating over the head with the fist, was put to the witness and he answered: "In such a case the epilepsy might be aggravated. The person may have had fits before, and after such an injury get more of them, or may go actually or permanently insane; both of these conditions may result." On cross-examination, the witness stated that

such a result might be immediate and it might be two years after and it might be twenty years.

In estimating the damages the jury were told "to consider the injuries sustained, if any, the physical and mental anguish suffered, if any, together with all the facts and circumstances." The instruction does not in terms direct the jury to take into consideration the fact, if proven, that the assault aggravated or stimulated the disease from which Hodges was suffering, but we think it is broad enough to have authorized the jury to consider this element of damage, and from the amount of the verdict the inference is, that they did take into consideration the evidence in respect to Hodges diseased condition, before and after the assault. There is no allegation in the petition that Hodges was an epileptic at the time of the assault, and consequently none that his disease was aggravated by the assault or that insanity was brought on by it. Because of the absence of such averment in the petition, it is contended by the respondents that the evidence of Hodges' epileptic condition should have been excluded and that this evidence was not competent to be taken into consideration by the jury in estimating the damages. The direct consequence of a wrongful act, either expected or unexpected, following as a natural result of the wrongful act, has always been the subject of compensation and need not be specially pleaded.

Thus, in Tyson v. Booth, 100 Mass. 285, it was held "that in an action for assault, the plaintiff, without specially alleging such an element of damage in his declaration, may prove as an aggravation of damage that he became subject to fits as a result of the assault."

In Sloane v. Edwards, 61 Md. 89, it was held that "in an action for damages for assault and battery, it is competent for the plaintiff to offer in evidence and for the jury to consider the fact, that as a result of the battery alleged, plaintiff had become subject to convulsions or fits, though such facts were

not specially alleged in the declaration as a ground for special damages; that whatever injurious consequences resulted naturally from the wrongful act, they became elements of damage and it is not necessary that the peculiar form or nature of the result should have been contemplated or foreseen by the wrongdoer."

And, Professor Sedgwick says in volume 1, section 112, of his work on Damages: "A common case of directly ensuing loss is where a physical injury stimulates a pre-existing tendency to disease, or leads to peculiarly unfortunate results, owing to a prior injury or delicate state of health or a peculiar physical condition, such as pregnancy. In all these cases, the loss is the direct, though unexpected, consequence of the injury and the plaintiff may recover compensation for it." See, also, cases cited in notes b, c, d and e, p. 160, to the text.

Plaintiff was also entitled to recover damages for mental anguish suffered on account of the physical injury inflicted on him by the defendants. Chilton v. City of St. Joseph, 143 Mo. 192; Schmitz v. Railway, 119 Mo. 256; Schaub v. Railway, 106 Mo. 74; Dailey v. Houseton, 58 Mo. 361; Deming v. Railway, 80 Mo. App. 152; Hyatt v. Railway, 19 Mo. App. 287.

Our conclusion is that the court did not err in the admission of the evidence in respect to the epileptic condition of Hodges before and at the time of the assault, and the evidence tending to prove that the assault may have aggravated the disease. And while the instruction should have been more specific in directing the attention of the jury to this element of damages, it, in effect, did authorize the jury to consider the evidence in respect to the epileptic condition of Hodges in estimating the damages.

As to the other ground for granting a new trial; that the verdict is excessive; it will suffice to say that the jury and the

forces which were brought to bear upon it to influence the verdict were under the eye of the trial judge, and an appellate court will not interfere with the discretion of the trial court in setting aside the verdict, unless it satisfactorily appears that such discretion was arbitrarily and unreasonably exercised.    Lee v. Geo. Knapp & Co., 137 Mo. 385; Chouquette v. Southern Electric Ry, 152 Mo. 257.

We have discovered nothing in the record to indicate that the learned circuit judge either arbitrarily or unreasonably exercised his discretion in setting aside the verdict of the jury and we affirm the judgment.    All concur.