# BROWN, Respondent, v. ST. LOUIS & SUBURBAN RAILWAY COMPANY, Appellant.

### St. Louis Court of Appeals, December 3, 1907.

1. **STREET RAILWAYS:** Negligence: Prima-Facie Case. In an action against a street railway company for damages to plaintiff on account of injuries to his son, inflicted by the negligence of defendant in running over him, the evidence is examined and held sufficient to make out a prima-facie case of negligence on the part of the motorman in running his car at an excessive rate of speed at a time and place where a lot of schoolboys were crossing the street, and in making no effort to stop the car in time to avoid the collision, after he could have seen the boy crossing the track.

2. **PARENT AND CHILD:** Measure of Damages: Loss of Earnings. In an action by a parent for the loss of his minor son's earnings and expense of medical attention caused by injuries to the son, evidence that plaintiff intended his son to follow his own vocation and of what the son would likely earn as he advanced in age and experience, was speculative and incompetent.

3. ———: ———: ———: Harmless Error. But the reception of such evidence was harmless error where the verdict was for little more than the sum expended by plaintiff for medical attendance, showing that the boy's future earnings were not considered by the jury.

4. **MINORS:** Damages: Contributory Negligence of Child. In an action for personal injuries to a child of eight years, it is not error to refuse an instruction upon contributory negligence which put the child upon an equality with an adult in respect to caring for his safety.

5. ———: ———: Negligence: Variance. In an action by a father for damages caused by injuries to his son, inflicted by the negligence of defendant, a street railway company, in running its car at excessive speed at a point where school children were accustomed to cross the track, the evidence is examined and held to show the place of the accident was the place alleged in the petition.

Appeal from St. Louis City Circuit Court.—*Hon. Daniel D. Fisher,* Judge.

AFFIRMED.

*Boyle & Priest* and *T. M. Pierce* for appellant.

(1) The court erred in refusing to give at the close of plaintiff's evidence, an instruction in the nature of a demurrer to the evidence asked for by the defendant. (a) Because there was no evidence of negligence on the part of defendant. Lee v. Jones, 181 Mo. 299; Holdridge v. Mendenhall (Wis.), 83 N. W. 110; Pletcher v. Traction Co. (Pa.), 39 Atl. 837; McGlacken v. Traction Co. (Pa.), 34 Atl. 863; Hanselman v. Railroad, 88 Mo. App. 123; Nellis on Street Railway Accident Law, p. 283; Maschek v. Railway, 71 Mo. 276. (b) Because the evidence shows conclusively that the injuries to plaintiff's son were occasioned by his own contributory negligence. Boland v. Railroad, 36 Mo. 484; Walker v. Railroad, 193 Mo. 483; Graney v. Railway, 140 Mo. 89; Payne v. Railroad, 136 Mo. 585, and cases cited therein. (2) The court erred in permitting the plaintiff to prove over the objection of the defendant, the earning capacity of a boy in the printing business from the age of fourteen to twenty-one years, because there can be no presumption that a child who is not old enough to learn an avocation or trade will follow any particular calling when he has matured sufficiently to do so. Blackwell v. Hill, 76 Mo. App. 55; Rosencranz v. Railroad, 108 Mo. 9; Brunke v. Railway, 112 Mo. App. 628; Hill v. Railway, 47 N. Y. 217; Oldfield v. Railway, 14 N. Y. 314.

*R. P. Spencer, W. C. Arline* and *Collins & Chappell* for respondent.

(1) The request of defendant that the court take the case from the jury on the ground of absence of evidence of negligence on the part of defendant and on the ground of presence of evidence of negligence on the part of the boy was properly refused. 21 A. & E. Ency. of Law, secs. 489, 518; Wenker v. Railway, 169 Mo. 592; Jegler v. Roeder, 79 Mo. App. 428; Chambers v.

Chester, 172 Mo. 461; Dwyer v. Railway, 12 Mo. App. 597; Gray v. Railway, 140 Mo. 89; Walker v. Railroad, 193 Mo. 483. (2) In this case it was not error to admit evidence of the scale of wages paid to boys in the printing business. Schmitz v. Railroad, 44 Mo. App. 395, 119 Mo. 256; Duke v. Railway, 99 Mo. 347; 8 A. & E. Enc. of Law, secs. 615, 653.

STATEMENT.—Leroy Brown, plaintiff's minor son, was run over and injured, on November 10, 1903, by one of defendant's street cars traveling north on Fair avenue, in the city of St. Louis. The suit is by the father to recover damages for loss of his son's services, and for money expended and liabilities incurred for surgical and medical attendance for his son.

After stating matters of inducement, the petition alleges:

"That on the said tenth day of November, 1903, the pupils of Harrison School, a public school of the city of St. Louis, used at their noon recess and for a long time prior to said date had used at their noon recess that part of Fair avenue between Penrose street and Green Lea Place which extends from Green Lea Place to a point about one hundred feet south of Green Lea Place, as a place of crossing back and forth between the schoolhouse on the east of Fair avenue and a vacant lot used by them as a playground on the west thereof; that the street and space between said lot and schoolhouse was, and had long been, frequented by many small children at said time of the day to the knowledge of the defendant and its servants operating defendant's cars at that place.

"That during the noon recess and at about the hour of one o'clock in the afternoon on the said tenth day of November, 1903, plaintiff's son, a pupil of said Harrison School, together with other pupils of said Harrison School, was crossing Fair avenue at said place on his way from the said vacant lot to the said schoolhouse,

and whilst so crossing a motorman of the defendant then and there in charge of a north-bound car belonging to the defendant, carelessly and negligently ran said car upon and over the plaintiff's said son, crushing his skull, causing a compound comminuted fracture of his skull from the apex to the base thereof for a space three inches in length by one inch in breadth injuring and leaving his brain permanently exposed without a bone covering thereto throughout said space, said fracture also extending laterally through the petrous portion of the left temporal bone, permanently destroying the hearing of plaintiff's said son in his left ear and permanently leaving his left ear displaced by a distance of about three-quarters of an inch below its former and natural position, fracturing and injuring his left lower maxilla or jaw bone causing suppuration and necrosis; fracturing and crushing his clavicle; fracturing and crushing his cervical vertibrae causing permanent wry neck; fracturing his left humerus with a compound comminuted fracture requiring permanent wiring of same causing a permanent shortening of his left arm; and crushing and injuring his left hip and thigh. All of said injuries resulting in a permanent injury and damage to the plaintiff's son, and also resulting in a permanent nervous injury to plaintiff's said son which will result in a permanent epilepsy and other permanent nervous disorders.

"Plaintiff further states that the aforesaid injuries sustained by his said son were directly caused by the negligence of the defendant in this, to-wit: that defendant and its servants and employees in charge of defendant's said car caused said car to run upon the place aforesaid at the noon hour aforesaid, when they knew or by the exercise of ordinary care would have known that said place was commonly and daily used by the pupils of Harrison School at said noon hour as a place of crossing said street and tracks, and commonly and

daily at said noon hour frequented by many small children, without keeping any watch or lookout for children on or approaching the said tracks on said street at said point in danger from said car; and that said failure to keep such watch or lookout directly caused said injuries to plaintiff's son; that defendant's servants in charge of said car ran said car at a rapid rate of speed on said Fair avenue between Penrose street and Green Lea Place at the place above described at said noon hour aforesaid, when they knew, or by the exercise of ordinary care would have known, that said street at said place was commonly and daily used at said noon hour by the pupils of Harrison School in crossing from the playground to the school building of said school, and frequented at said hour by many small children; and plaintiff avers that said rate of speed at which said car was propelled at said time and place was at said time and place negligent, careless, unreasonable and dangerous, and that said rapid and excessive rate of speed directly caused said injuries to the plaintiff's said son; that the defendant and its servants and employees in charge of said car at said place negligently failed to use any care to control said car or to stop the same and avert injury to plaintiff's son, but, on the contrary, negligently caused, suffered and permitted said car to strike and run over plaintiff's son, as aforesaid, and that said failure of defendant directly caused said injuries to plaintiff's son; that defendant was further negligent in this; that at the time of said injury to plaintiff's son there was in force within the city of St. Louis an ordinance of said city whereby it was provided that motormen and conductors of street cars should keep a vigilant watch for persons on foot especially children, either on the street or moving toward it, and upon the first appearance of danger to such child the car should be stopped within the shortest time and space possible, and plaintiff avers that at the time of said injuries to

his said son, defendant's motorman in charge of said car failed to keep such vigilant watch and thereby directly caused said injuries to plaintiff's said son."

The answer was a general denial.

The evidence shows that at the time of his injury, Leroy Brown was eight years old and attended Harrison School, situated at the northeast corner of Fair avenue and Green Lea Place. The latter street runs east and west and is crossed by Fair avenue, running north and south, at right angles. Three hundred feet south of Green Lea Place, Fair avenue is crossed by Penrose street running east and west, and three hundred feet south of Penrose street, Lee avenue runs east and west across Fair avenue. There is a vacant lot on the southwest corner of Fair avenue and Green Place, fronting one hundred and five feet on Fair avenue and running back west one hundred and fifty feet. South of this open lot is a dwelling house, fronting on Fair avenue and setting from ten to fifteen feet back from the building line. On the north side of this dwelling house is a close board fence about five feet high, and in front is a picket fence about three feet high. Defendant has a double track railroad on Fair avenue over which, in 1903, it operated street cars by electric power. Cars traveling north occupied the east track and those traveling south the west one. Harrison School is a public school and had been for about twelve years prior to 1903. Defendant had been operating cars over Fair avenue for about six years prior to that date. Plaintiff's son was attending this school in the fall of 1903.

The janitor of the school testified the school gave a recess from twelve to one p. m., on each school day, and for twelve years, in the spring and fall seasons, from fifty to one hundred boys went daily to the vacant lot at the southeast corner of Fair avenue and Green Lea Place, to play ball during the noon recess. The evidence tends to show that in going from the schoolhouse to the vacant

lot, and in returning, the boys crossed Fair avenue south of Green Lea Place. A crowd of boys, including Leroy Brown, were on the lot playing ball during the noon recess on November 19, 1903. At 12:55 p. m., the janitor rang the school bell and the boys ran from the lot across Fair avenue, on their way back to the schoolhouse. Leroy Brown was in the rear and when he reached the middle of the east railroad track on Fair avenue, he was struck by one of defendant's cars traveling north, knocked down on the track and run over by the wheels of the front truck, and injured in the manner and to the extent alleged in the petition.

Arthur Duell, a witness for plaintiff, testified he turned south on Fair avenue from the next street north of Green Lea Place and heard and saw a car coming north at a speed of from twenty-five to thirty miles an hour; that he walked rapidly south on Fair avenue, heard the school bell ring, saw the boys run across Fair avenue from the vacant lot, and saw Leroy Brown stoop down at the northeast corner of the dwelling house, as if in the act of picking up something, and then run east as fast as he could, and saw him when he reached the center of the east railroad track where the car struck him; that he could see the motorman plainly and that he made no effort to stop the car, "did not move his hands," until the boy was struck; that there was no obstruction to prevent the motorman from seeing the boy running toward the track, if he had looked.

Leroy Brown's evidence, fairly interpreted, tends to show he was about three feet away from the house next the vacant lot when he heard the school bell; that when he got from behind the yard fence and within four or five feet of Fair avenue, he looked south and saw the car that struck him at Penrose street, and ran northeast, thinking he could cross the track before the car came. He testified he had been cautioned by his father

about crossing streets where there were railroad tracks and that he took his chance after he saw the car.

Duell testified the car was from one hundred and fifty to one hundred and sixty feet from the boy when he first saw him start to run across the street. Plaintiff's evidence tends to show the point of collision was about two hundred and forty feet north of Lee avenue, and about sixty feet south of Green Lea Place; that the boy was knocked and rolled from ninety to one hundred feet by the car before it was stopped.

Defendant's evidence tends to show the car was running at a speed of from seven to eight miles per hour; that fifteen miles per hour was the maximum speed to which the car was geared but it would gain something over fifteen miles on a level track by force of gravity; that traveling at a speed of thirty miles per hour, the car could have been stopped in a space of one hundred and twenty or one hundred and forty feet; at a speed of twenty-five miles per hour in a space of one hundred feet, and at a speed of fifteen miles per hour in a space of from forty to forty-five feet. The motorman in charge of the car testified he had never seen schoolchildren playing on the vacant lot or crossing the tracks until Leroy Brown was struck; that after crossing Lee avenue, he saw a covered wagon coming south on the west track and rang his bell and turned off the power for fear the wagon might turn across the track; that the wagon came on south and Leroy Brown ran from behind it on the east track, within from eighteen inches to two feet of the car, and he did not see the boy until he came from behind the wagon. The motorman's evidence in respect to the wagon and the fact that the boy ran from behind it on the track immediately in front of the car is corroborated by the evidence of the conductor and of R. H. Brann, a paper hanger, who testified he saw the accident through a window of a nearby house where he was working. In

rebuttal Duell testified there was no wagon on the track, or anywhere near it, that he had a clear unobstructed view of the tracks for a distance of from eight hundred to nine hundred feet.

Verdict and judgment were for plaintiff for one thousand dollars, from which defendant appealed.

BLAND, P. J. (after stating the facts).—1.  The first error assigned is the refusal of the court to take the case from the jury, as requested by defendant.  The evidence of the janitor of the Harrison School, that from fifty to one hundred school boys played ball daily on the vacant lot west of the railroad tracks; the evidence showing the boys crossed these tracks where Leroy Brown was struck by the car, and the evidence of Duell, that the car was running at an excessive rate of speed at the very moment the school boys were crossing the track to get to the school, and that the motorman made no effort whatever to stop the car, though he could have seen Leroy Brown running across the track and in a position of peril in time to have stopped the car and avoided the collision, if he had looked, not only makes out a prima-facie case, but a strong case of gross negligence.

2.    Plaintiff testified he was foreman of a job press room at George D. Barnard & Company's establishment and, over the objection of defendant, testified that Leroy, before he was injured, was a strong, bright and intelligent boy and capable of preparing to follow the business he (plaintiff) was engaged in, and that he had intended to have him follow the same business and to put him to work at the age of fourteen years; that boys were started in that business at four dollars a week and from that advanced to journeymen according to their ability, after serving four years, when they received from eighteen to twenty dollars a week.  The ground of objection to this evidence was the testimony

was too indefinite, and there was no presumption that the boy would follow in the footsteps of his father.

In Rosenkranz v. The Lindell Ry. Co., 108 Mo. l. c. 17, 18 S. W. 890, MACFARLANE, J., said: "The impairment of one in his infancy is as great a damage to him, as though he had not been injured until the day he reached his majority. That he would have an equal right to compensation logically follows. This plaintiff had never earned anything, and what his ability to labor or his capacity for earning money in business pursuits will be in the future no one can tell with any certainty. It is properly held in such case, in the absence of the existence of direct evidence, that much must be left to the judgment, common experience and 'enlightened conscience of the jurors, guided by the facts and circumstances in the case.'" This case is approvingly cited in Schmitz v. Railway, 119 Mo. 256, 24 S. W. 472, and in Brunke v. Telephone Co., 112 Mo. App. l. c. 628, 87 S. W. 84.

Loss of earning power is always an element of damages in a personal injury case and is ordinarily shown by the difference in the earning power of the person injured before and after the injury, but evidence of liability of promotion, or evidence to show that a plaintiff was in the line of promotion in his calling, and if promoted his earnings would have been increased, is incompetent, because remote and speculative. [8 Am. & Eng. Ency. of Law (2 Ed.), 654.] It seems to us the evidence that plaintiff had intended his son Leroy should follow his occupation and what he would likely earn as he advanced in age and experience, is entirely too speculative to furnish a basis for assessment of damages, and for that reason incompetent. But we do not think the admission of this evidence was prejudicial, for the reason the verdict was for a sum but little in excess of the expense plaintiff was put to for medical services, etc., furnished his son, and that compensation

for future earnings barely entered into the estimation of damages.

3. The court refused the following instruction asked by defendant:

"The court instructs the jury that in determining whether or not the plaintiff's son was aware of the danger of endeavoring to cross the defendant's track in front of the moving car, described in the evidence, and in determining whether or not he saw said car while in a place of safety, and took his chances in trying to get across, they will consider any admission on the part of the plaintiff's son himself that he did know the danger,, and that he took his chances in an endeavor to cross the track in front of said car."

The following instruction was given for defendant:,

"The court instructs the jury that, although they may believe and find from the evidence that the plaintiff's son, Leroy Brown, at the time of his alleged injury was a child of eight or nine years of age, still if they further find from the evidence that he had sufficient intelligence and understanding to appreciate the danger of going in front of, or in close proximity to the car of defendant, shown by the evidence to have struck him, and if you find that he did so, and that by so doing and exposing himself to danger, the plaintiff's son was guilty of such negligence as directly contributed to his injury, the jury will find for the defendant; and further, if the jury believe and find from the evidence that the plaintiff's son saw the car described in plaintiff's evidence before he attempted to cross the tracks of defendant, and then and there comprehended the danger of such crossing, yet attempted to cross said tracks and received the injury complained of by reason of such attempt to cross said tracks, then he was guilty of such negligence as prevents a recovery, and the jury will find for the defendant."

The instruction given properly declared the law.

The one refused put the boy on an equality with an adult, in respect to exercising care for his own safety, and for that reason is erroneous, and we think, also, defendant puts a strained construction on Leroy Brown's evidence to make it appear he apprehended the danger and took chances. The boy stated he saw the car at Penrose street, more than two hundred feet south of him, when he was within five feet of the street. He was running at the time and had plenty of time to cross the track had the car been running at a lawful speed, and there is no evidence to show he discovered it was running at an unlawful or excessive speed.

4. Error is assigned in the refusal of the court to give the following instruction asked by defendant:

"The jury are instructed that they cannot find for plaintiff on the theory that there were children daily playing on the vacant lot mentioned in plaintiff's evidence at the noon hour, and when school began for the afternoon, said children indiscriminately scattered across defendant's tracks at other points than at said alleged crossing, but the jury before they can render a verdict for plaintiff must find from the preponderance of the evidence in this case that there was a definite crossing at the time and place above mentioned made by habit of such children as distinct, from a miscellaneous and indefinite crossing of defendant's tracks elsewhere by children, and that said defendant's servants knew said alleged specific and definite crossing of children at said time and place as distinct from other times and places of crossing said tracks by children."

The point made is, the petition alleged a different point where the boys were in the habit of crossing the tracks in going from the playground to the school, than the one where the evidence shows the collision took place at a point not alleged in the petition. The allegation in the petition is that the boys used as a place of crossing that part of Fair avenue which extends about

one hundred feet south of Green Lea Place. This would make a customary crossing of one hundred feet wide. Duell testified the car struck the boy about ninety or one hundred feet south of Green Lea Place, so that the evidence shows the boy was struck within the alleged space used as a crossing by the school children.

No reversible error appearing, the judgment is affirmed. All concur.