MASCHEK v. ST. LOUIS RAILROAD COMPANY, *Appellant.*

**Negligence, A case of, Defeating Recovery on the part of the Plaintiff.** In an action against a street railway company to recover damages for the killing of plaintiff's child by defendant's car, the facts appeared, by the testimony of plaintiff's witness, to be as follows: The car was moving at a moderate rate of speed on a slightly down grade, and witness was standing beside the driver, when he heard the driver shout, " look out," " hold on," or " stop." Turning, he saw plaintiff's child, (a boy three years old,) about six feet ahead of the car-mules and four feet from the track, and running toward the track. The driver, with his right hand on the brakes and his left pulling on the lines with such force that the tongue went up over the heads of the mules, was doing his best to stop the car. The child ran to the middle of the track, where he was overtaken and crushed by the car. The whole transaction seemed to the witness to have occurred " in a moment." There was no positive proof that the driver saw the boy at all before he hallooed; *Held,* that on this state of facts the plaintiff was not entitled to recover.

*Appeal from St. Louis Court of Appeals.*

REVERSED.

*Smith P. Galt* for appellant.

*Jos. Jecko* for respondent.

NAPTON, J.—The only point made in this case which is thought by this court necessary to be decided is, whether the demurrer to the plaintiff's evidence should have been sustained. It is conceded that if the testimony conflicts, or if there is any from which a jury may fairly deduce a liability, the case must go to the jury. But where there is no evidence to authorize a verdict, and it can only be traced to that sympathy which jurors, and I may add judges, too insensibly feel for the weak in a contest with the powerful, we have heretofore considered it the duty of this court, however distasteful it may be, to interfere. The conclusion we have reached on this point renders unnecessary any investigation of the other two points made by the appellant, de-

fendant below, in regard to the rejection of certain questions put by him during the trial, and in regard to the rejection of an instruction concerning accident or misadventure.

There was no evidence offered by the defendant in this case, and the principal witness for the plaintiff, indeed it might be said the only one of any importance, was a passenger on the car by the name of McIlvain. He was returning from his residence to the post-office, where he was a clerk, and was standing by the driver when the accident occurred, about one o'clock. The grade of the track on Carondelet avenue, at the point where the child was killed, was slightly on the decline going north. Witness was on the west side of the driver, and hearing the driver shout " look out," " hold on," or " stop," he turned his face toward the east, and saw the little boy running for the track about six feet ahead of the mules and four feet east of the track, the driver with right hand on the brakes and his left pulling on the lines with such force that the tongue went up over the heads of the mules. When the driver shouted to the boy, he kept right on until he got to the middle of the track, where he turned his face north, got under the tongue which was thrown up by the pull of the driver, until he got to the axle, or where the tongue was so low that it struck him, and he fell on his face and was run over by one of the hind wheels. The driver was all this time trying his best to stop the car, and it appeared to the witness that all this occurred in " a moment."

The question of negligence in the driver must be solved by an answer to one of two questions. What did the driver do which he ought not to have done, or what did he omit to do which he ought to have done? The only hypothesis upon which the assumption of negligence can be based, is that the driver did not shout, ply the brake, and pull on the mules as soon as he ought. He could do nothing more than what he did, but if he waited too long when he had an opportunity of doing those things

sooner, it was negligence.  Is there any evidence to show this or that could lead to such a conclusion ?  There was no positive proof that he ever saw the little boy till he hallooed; but suppose he saw him when he first left the sidewalk.  Of course it will not be pretended that whilst the child was on the sidewalk, the driver had any right to imagine that he would undertake to cross the street, but when he left the sidewalk he was eleven feet from where he was when McIlvain first saw him.  How long would it take this little boy three years old, dressed in coat and pants, and not in a frock, to run eleven feet?

All of the transaction which the witness McIlvain saw, he says occurred "in a moment."  How many moments must have passed before McIlvain saw him after he started from the curbstone on a run?  And how many moments transpired before McIlvain's attention was turned by the shouts of the driver, after the driver had commenced plying the brakes and pulling on the mules?  The driver, it appears, without contradiction, was steady and perfectly sober; the mules were on a slightly down grade and going in a moderate trot.  The recklessness of the little child, which is obvious, was no excuse for negligence in the driver, if there was any, but we confess our inability to discover any proof of negligence and, therefore, must in accordance with our uniform practice, reverse the judgment.  The other judges concur.