E. T. MOLYNEUX, Respondent, v. SOUTHWEST MISSOURI ELECTRIC RAILWAY COMPANY, Appellant.

**Kansas City Court of Appeals, May 29, 1899.**

1. **Street Railways:** NEGLIGENCE: SPEED: AVOIDING COLLISION: JURY QUESTION. The mere fact that a street car is running in excess of the rate permitted by ordinance will not entitle an injured party to go to the jury on the question of negligence when there is no evidence showing that the motorman could have avoided the injury if the speed had been within the permitted rate.

2. ———: ———: ———: SKITTISH ANIMAL: MALICE. A motorman is not required to check the speed of his car every time he is notified to do so by the owner of a skittish horse on the street; and his failure to so stop where no imminent peril is indicated will not render the company liable for resulting damages unless his conduct can be attributed only to malicious disregard of the safety of the injured person.

*Appeal from the Jasper Circuit Court.*—Hon. J. D. Perkins, Judge.

Reversed.

McReynolds & Halliburton for appellant.

(1) Although defendant's car may have been running in excess of ten miles an hour in violation of the ordinances of Webb City, yet the evidence showing that the accident was not caused by the speed of the cars, plaintiff is not entitled to recover on that ground, and the instructions to that effect should have been refused. Hanlon v. Railway, 104 Mo. 381. Plaintiff's first and sixth instructions are erroneous, should not have been given. Bluedorn v. Railway, 121 Mo. 268. (2) The defendant is not liable for injuries caused by plaintiff's horse becoming frightened at its car unless the fright was caused by some unusual sight or sound which the company was negligent in creating, of which there is no evidence in this csae. Am. and Eng. Ency. of Law, p. 1031, sec. 5 and note 2; Chapman v. Railway, 27 Ohio L. J. 27; Booth on Street Railways, secs. 297, 298, p. 399. (3) Defendant's peremptory instruction should have been given under the evidence in this case. Dunkman v. Railroad, 95 Mo. 232; Rine v. Railroad, 88 Mo. 392; Yarnall v. Railroad, 75 Mo. 575; Swigert v. Railroad, 75 Mo. 475; Grant v. Railroad, 25 Mo. App. 227; Senate v. Railroad, 41 Mo. App. 295; Weber v. Railway, 100 Mo. 194; Corcoran v. Railroad, 105 Mo. 399; Barker v. Railroad, 98 Mo. 50; Carroll v. Inter-State R. T. Co., 107 Mo. 653; Watson v. Railway, 133 Mo. 246.

W. H. Curry, J. W. McAntire and Clark Craycroft for respondent.

(1) The plaintiff, at the time he drove his horse and cart between the pile of brick and defendant's track, had a right to presume that the motorman in charge of defendant's

car would run it at a rate of speed not exceeding ten miles per hour. Sullivan v. Railroad, 117 Mo. 214. (2) It was the duty of defendant's motorman after he saw, or by the exercise of ordinary care could have seen, plaintiff's perilous condition, to have used all means in his power to stop the car in time to have prevented injury to plaintiff. Sullivan v. Railroad, 117 Mo. 214; Senn v. Railway, 108 Mo. 142; Hickman v. Railway, 47 Mo. App. 65; Stanley v. Railway, 114 Mo. 606; Smith v. Railway, 52 Mo. App. 36. (3) Defendant's motorman was two hundred and seventy feet from plaintiff when he saw plaintiff in a perilous condition. He stopped the car in less than seventy feet after he struck plaintiff, showing conclusively that he could have stopped the car in time to have prevented the accident, and the failure to do this was negligence on part of the defendant.

SMITH, P. J.—This is an action to recover damages for personal injuries in which there was a trial resulting in judgment for plaintiff and defendant appealed.

At the conclusion of all the evidence the defendant interposed a demurrer thereto which was by the court denied and the propriety of the action of the court in that regard is the question now before us for consideration. It appears from the evidence that the defendant operates a street railway line over and along Daugherty street in Webb City. It further appears that the said city, just before the time of the plaintiff's injury, had deposited certain sidewalk material, consisting of brick and sand, on the south side of said street between Roan avenue and Oronogo street. The space between these obstructing materials and the south rail of the defendant's railway track was from twelve to fourteen feet. On the day of plaintiff's injury he was driving in a jog trot a quiet old mare, attached to a cart, westerly along the south side of Daugherty street and when he reached the place where the passway along said street was narrowed by the deposit of said sidewalk materials, he met coming east one of defendant's cars. The plaintiff's

cart was between four and five feet wide.   If he drove close up to the sidewalk material there would have been from seven to nine feet between his cart and the south rail of the defendant's track.   The plaintiff drove as near the sidewalk truck as he safely could.   There was therefore no danger of a collision with the approaching car to be apprehended by plaintiff.

The speed of the car was in excess of that permitted by the ordinances of the city.   The plaintiff's mare took no notice of the approaching car until it reached a point opposite to her, or within a few feet of her, when she shied off toward the sidewalk material and backed the cart until the corner of the bumper of the car came in contact with the rim of one of the cart's wheels, in consequence of which it was wrecked and the plaintiff violently thrown against the sidewalk material, causing the injuries of which he complains.   There is not found in the record the slightest evidence tending to

STREET railways: negligence: speed: avoiding collision: jury question.

prove that the defendant's motorman could by the exercise of the greatest care and diligence, after he discovered that the plaintiff's cart was backing, have stopped the car in time to have avoided the collision even if its speed had not been excessive. Undoubtedly the speed was not the cause of the injury.

Some of plaintiff's witnesses testified that his mare was not frightened but "only shied off to get away from the wind of the moving car."   The plaintiff contends that as the current of air which frightened his mare was caused by the unlawful speed of defendant's car, therefore such unlawful speed was the direct cause of the injury.   Without stopping to consider whether or not the unlawful speed was the direct and proximate cause of the injury it is a sufficient answer to the plaintiff's contention to say that it was not shown directly or inferentially that had the speed of defendant's car been only ten miles an hour, its lawful speed, no atmospheric current would have been thereby created.

Molyneux v. Electric R'y Co.

The plaintiff testified when the defendant's car approached within two blocks of him, that he thought his mare might get frightened on account of the speed of the car and for that reason he threw up one hand thinking the defendant's car might stop.

—: —: —:
skittish animal:
malice.

It does not appear from the evidence that the defendant's motorman saw plaintiff's signal or, if so, that he understood its significance. While a motorman operating a car in a street of a populous city is bound to exercise that care and vigilance which is commensurate with the danger to be apprehended therefrom, yet, we know of no principle of the law of negligence which enjoins on him the absolute duty to stop his car every time he is notified to do so by any one driving a nervous, skittish horse on the street, or if where no imminent peril is indicated he fails to so stop after such notice and the horse becomes alarmed at the movement of the car and runs away that his company thereby becomes liable for the resulting damages, unless his conduct in the management of the car be attributed only to a wanton or malicious disregard of the safety of the driver. If street railway companies are bound to stop their cars every time required to do so by the drivers of nervous and skittish horses in apprehension of fright, or in actual fright, they could thereby subject their passengers to delay and inconvenience and fail to meet the requirements of the traveling public. As stated in section 298 of Booth's Work on Street Railways, "if drivers, motormen and gripmen were required to stop their cars, slacken their speed or omit or discontinue necessary signals upon which the safety of others depend because timid horses may become frightened, or already manifest symptoms of fear, not indicating imminent peril, street railway service would be so materially embarrassed by numerous delays as to defeat the purpose for which said franchises are granted."

It may be that the defendant's car was being run at an unlawful rate of speed, though there is much very persuasive

evidence to the contrary, and if so it was that far guilty of negligence, but there is no evidence tending to show that it was the speed that frightened the plaintiff's horse. Nor, as has already been stated, was there any evidence showing that had defendant's motorman been on the alert and exerted every effort within his power to check the speed of the car, after discovering the fright of plaintiff's mare, he could have done so in time to have averted the collision. In no view of the evidence which we have been able to take do we think the plaintiff was entitled to a submission of the case to the jury, and therefore the denial of the demurrer was error.

The judgment will accordingly be reversed. All concur.