PETERSON, Appellant, v. ST. LOUIS, IRON MOUN-
TAIN & SOUTHERN RAILWAY COMPANY.

Division Two, June 12, 1900.

1. **Contributory Negligence:** RECOVERY. The law permits a recovery
of damages by a person who sustains an injury due to the negli-
gence and mismanagement by a railroad company of its trains, but
it is only when the injured party is not guilty of negligence con-
tributing directly to his injury that such recovery is permitted.

2. ———: SPEED OF TRAINS: MATTER FOR JURY. Plaintiff's husband
was negligent in going on the track of the railroad just before the
train struck him, which was running at a greater rate of speed
than permitted by ordinance. *Held*, that, notwithstanding the neg-
ligence in running the train at such rate, yet as plaintiff was negli-
gent in going on the track, his widow could not recover, unless de-
fendant's servants in charge of the train could have stopped it in time
to have averted the injury after they saw him on the track; but as
the undisputed evidence was that he was only thirty feet distant
when they saw him, and that they then did everything in their
power to stop the train and avert the injury, but that it would have
been impossible to do so had the train been running only at the rate
fixed by ordinance, it was not error not to submit to the jury the
question of whether the railroad's servants could have stopped the
train in time to have avoided the injury.

3. ———: LOOK AND LISTEN. It is the duty of a person crossing a
railroad track to look and listen for trains in order to avoid injury
to himself, and if he fails to do so and is injured in consequence
thereof, he is guilty of contributory negligence.

Appeal from St. Louis City Circuit Court.—*Hon. Jno. A.
Talty*, Judge.

AFFIRMED.

*H. M. Pollard* for appellant.

(1) The second instruction given on the part of the
defendant is likewise erroneous because it takes from the

jury all questions excepting the negligence of the deceased in going on to the defendant's track. Everything else is disregarded. In it the court told the jury that although they might believe that Peterson's death was caused by the negligence of the railroad company, yet, if they believed that Peterson was guilty of negligence in going upon the defendant's track, their verdict should be for the defendant, regardless of all else. There can't be any question in the mind of any human being but that it was negligent for Peterson to go on the track. The result proved it beyond a peradventure. Notwithstanding this there are legal propositions which would enable his widow to recover and which should have been injected into this instruction or given at the instance of the plaintiff as requested, viz: An allegation or statement that it was necessary that Peterson's negligence should have contributed directly to his death; also a statement as to the ability of the defendant's agents to have stopped the train in time to have avoided the accident. The instruction is vicious from beginning to end. It took the case absolutely away from the jury. No honest man could have found for the plaintiff if he considered that instruction. It also conflicts directly with plaintiff's instruction. Hanlon v. Railroad, 104 Mo. 387; Payne v. Railroad, 129 Mo. 416. (2) Had this train only been running twenty miles an hour Peterson would have been several steps away. He was stepping over the last rail and in one-half second would have been safe, or if the train had been run about twenty miles an hour the engineer could have slackened up so as to have given Peterson time to get out of the way. Schlereth v. Railroad, 96 Mo. 509; Dahlstrom v. Railroad, 108 Mo. 538. That decision being the law of this State, absolutely supported and sustained the instruction asked. The facts conclusively show that had the ordinance not been violated, Peterson would not have been hurt. Klein v. Railroad, 90 Mo. 321; Eswin v. Railroad, 96 Mo. 296; Kelly v. Railroad,

95 Mo. 284; Dunkman v. Railroad, 95 Mo. 244; Harlan v. Railroad, 65 Mo. 22; Kelly v. Railroad, 75 Mo. 140; Scoville v. Railroad, 81 Mo. 440; Welsh v. Railroad, 81 Mo. 466; Bergman v. Railroad, 88 Mo. 678; Rine v. Railroad, 88 Mo. 392; Frick v. Railroad, 75 Mo. 595; Merz v. Railroad, 88 Mo. 677; Drain v. Railroad, 86 Mo. 574; s. c., 10 Mo. App. 531; Karle v. Railroad, 55 Mo. 476; Guenther v. Railroad, 108 Mo. 18.

*Martin L. Clardy* and *Henry G. Herbel* for respondent.

(1) Counsel's interpretation of defendant's second instruction is not warranted by its language.    If it had merely declared that deceased's going upon the track at all would have prevented a recovery in this action, there might have been some room for criticism, but it did not do so, but left the jury to determine whether his going upon the track in "the way he did" was negligence, *i. e.*, in the face and within a few feet of a rapidly moving train, the close proximity of which he must have been aware of, if not by the sense of hearing (as his own witnesses swear that the bell of the engine was ringing), by that of sight, as the headlight of the engine (which all of the witnesses agree was burning brightly) must have illuminated the crossing from the time that the engine was several hundred feet east of him until it struck him, a warning which he must as a matter of law be held to have been conscious of.    Huggart v. Railroad, 134 Mo. 679; Watson v. Railroad, 133 Mo. 250; Vogg v. Railroad, 138 Mo. 178.    (2) The court will take judicial notice of the physical fact, that a train running at a speed of between fifteen and twenty miles per hour (the latter being the ordinance limit), could not have been stopped in time to have avoided a collision with the deceased, who was crossing the track at right angles.    Even if the engineer

had seen deceased approaching the track (which he did not do until the engine got within about fifteen feet of him, as he was sitting on the right side of the engine, and deceased walked on to the track from the left or opposite side), he would have had the right to assume that he would stop before reaching the track (Boyd v. Railroad, 105 Mo. 371; Sinclair v. Railroad, 133 Mo. 233), and until he got on the track he was in no danger of being struck.    (Watson v. Railroad, 133 Mo. 251.)   The mere statement of the proposition that a train running at a speed of fifteen or twenty miles could be stopped in the time it takes a man to make three steps (the number it requires to cross an ordinary railroad track), carries with it its own refutation.    Boyd and Sinclair cases, *supra.*

BURGESS, J.—This is an action by plaintiff, the widow of Henry Peterson, deceased, for five thousand dollars damages for the death of her husband which is alleged in the petition to have occurred in the city of St. Louis on the 30th day of November, 1896, while he was walking along on Ivory street, by reason of the negligence of defendant in running its train of cars over him without ringing its bell, and while running its train at a rate of speed in excess of that which is allowed by the ordinance of said city.

The answer was a general denial and a plea of contributory negligence on the part of the husband of plaintiff.

The accident occurred at the point where defendant's road crosses Ivory street.   At this point Ivory street runs northeast and southwest, while defendant's parallel railroad tracks run nearly east and west.   Trains moving east at this point occupy the north track, while trains moving west occupy the south track.   Just east of Ivory street the Kirkwood branch of defendant's road joins the main line on the south.   After dark on the evening of November 30, 1896,

plaintiff's husband was going in a northerly direction on said street, and immediately after crossing the tracks of the Kirkwood branch a freight train going east passed, while at the same time a passenger train on the main line going west, running at the rate of about twenty-five to thirty miles per hour came up. In the meantime deceased had stepped upon the north track, in front of a passenger train going west, and about the time he was to take the last step off of the track he was struck by the engine of the passenger train and killed. The whistle on the passenger train had been sounded for the crossing of Ivory street some two or three blocks before reaching it. When the engineer in charge of the locomotive first saw deceased he was about thirty feet from Ivory junction crossing. He was then crossing the track in front of the train from the west side or south side on to the east side. The engineer immediately put on the brakes, sounded the danger signal three or four times and did everything that he could to prevent the accident. The train ran about four hundred feet after the accident before it stopped. The railroad track east of Ivory street is comparatively straight for about fifteen hundred feet, but just west of this street it curves to the north. The track is nearly about level at this crossing. At the time of the accident the train was running at the rate of thirty miles per hour, while by the ordinances of the city the maximum rate of speed of steam cars was twenty miles per hour.

The court at the instance of plaintiff instructed the jury as follows:

1. The court instructs the jury, that if you believe from the evidence, that Henry Peterson, the husband of the plaintiff, was by the defendant's locomotive, struck and killed while crossing said defendant's road at or near the crossing of Ivory street, in the city of St. Louis, and that said striking and killing were the result of, and occasioned by, the negli-

gence or unskillfulness of the servants, engineer or em-
ployees of the defendant, conducting and managing said
locomotive, they will find for the plaintiff $5,000 in damages;
provided, they further believe, that deceased's contributory
negligence, if any, did not directly contribute to said injury,
and the burden of showing such contributory negligence, on
the part of the deceased, is upon defendant.

2. Although the jury may believe from the evidence,
that Peterson was negligent in crossing the railroad track
immediately in front of an approaching train, still he had a
right to presume that defendant would obey the law, and
not run its train more than twenty miles per hour.

3. The court instructs the jury, that, if you believe
from the evidence that Henry Peterson, at the time he was
killed, was the husband of plaintiff, and that said suit was
brought within one year after the death of said Henry
Peterson, and if you shall further believe from the evidence
that the place where said Henry Peterson was struck by
defendant's train was at or near a public crossing of defend-
ant's railroad, in the city of St. Louis, Missouri, and that
the track was straight and level for a distance of, to-wit,
1,500 feet from the east, and if you believe that said Henry
Peterson, while crossing or attempting to cross defendant's
said track, became in imminent peril of being struck by
defendant's said train, and defendant's employees in charge
of said train became aware of his peril of being struck, in
time to have enabled them, by the exercise of ordinary care,
to have stopped said train and to have averted the injury to
deceased; or, if you believe from the evidence, that said
employees in charge of said train, by the exercise of ordinary
care, could have become aware of his peril in time to have
stopped said train and to have averted said injury to said
deceased, and if you believe that they failed to exercise such
care and stop said train, and that by reason of said failure

to exercise said ordinary care, the said train was not stopped and the said Peterson was struck and killed, then the jury must find for the plaintiff, although you may believe that the deceased, Henry Peterson, was guilty of negligence in attempting to cross said track in front of the approaching train.

On behalf of defendant and over the objection and exception of plaintiff the court instructed the jury as follows:

1. The court instructs the jury that if they believe from the evidence that there were crossing gates at the sides of the tracks of the Oakhill railroad where it crossed Ivory avenue at the time of Henry Peterson's injury, and that said gates were down at the time the train by which he was struck was passing over said street, then defendant had the right to run its said train at a speed of twenty miles per hour over said street, and if you believe from the evidence that said train was not running at a greater rate of speed than twenty miles an hour while approaching and crossing said street, your verdict will be for the defendant.

2. The court instructs the jury, that although they may believe from the evidence that the death of Henry Peterson was caused by defendant's negligence, yet if you further believe from the evidence, that said Henry Peterson was guilty of negligence in going upon or walking upon defendant's track in the way he did, your verdict will be for the defendant.

3. The court instructs the jury, that although they may believe from the evidence that the train by which Henry Peterson was struck was running at an unlawful speed at the time he was struck, yet, if you further believe from the evidence that said Henry Peterson could by looking or listening have seen or heard the approach of the train before stepping, or while walking, on defendant's track, in time to

have avoided contact therewith, and did not do so, your verdict will be for the defendant.

4.   The court instructs the jury, that if they believe from the evidence that the death of Henry Peterson was the result of mere accident or casualty, and not of negligence on defendant's part, your verdict will be for the defendant.

5.   The court instructs the jury, that it is the duty of a person who is about to step upon a railroad track, to look and listen for approaching trains in both directions, and if you believe from the evidence that, at the time Henry Peterson stepped upon the track on which he was struck, he could by looking have seen, or by listening have heard, the approach of the engine by which he was struck and avoided a contact therewith, but did not so look and listen and was killed in consequence thereof, your verdict will be for the defendant.

6.   By mentioning the "burden of proof" and "preponderance of evidence" the court intends no reference to the number of witnesses testifying concerning any fact, or upon any issue in the case, but simply by way of briefly expressing the rule of law, which is that, unless the evidence (as to such issue), appears in your judgment to preponderate, in respect of its credibility, in favor of the party to this action on whom the burden of proof (as to such issue) rests then you should find against such party, on said issue.

Under the evidence and instructions of the court, the jury returned a verdict for defendant, and, after unsuccessful motion to set the same aside and for a new trial, plaintiff appeals.

The errors assigned are the refusal of instructions asked by plaintiff, in compelling plaintiff to modify her instructions numbered one and two, in giving instructions on the part of defendant, and in giving conflicting instructions.

From the view we take of this case, we are of the opinion that it would serve no useful purpose, and be entirely

unnecessary, to pass upon either of these questions, for whatever might be our opinion with respect thereto, there is no escape from the conclusion that deceased was guilty of such gross and inexcusable negligence in going upon the railroad track in front of the train at the time and under the circumstances, as to preclude a recovery on account of his death. While the law permits a recovery against a railway company by a person who sustains injury by reason of the negligence and mismanagement of its train of cars, it is only when the injured party is not guilty of negligence contributing directly to his own injury, that a recovery for damages is permitted.

Upon this question plaintiff's counsel in his brief says: "There can't be any question in the mind of any human being that it was negligent for Peterson to go on the track. The result proved it, beyond a peradventure." But it is insisted that notwithstanding his negligence, if the train was running at a rate of speed in excess of that prescribed by the ordinances of the city, and but for that fact, if defendant's agents and servants in charge of the train could have stopped it in time to have averted the injury after they saw deceased upon the track, it was their duty to do so, and that this was a question for the jury. But there was no evidence to justify a recovery upon this theory of the case. In fact the evidence was all the other way, and showed that after those in charge of the train saw deceased on the track that they did everything in their power to stop the train and prevent the injury, but that it was impossible to do so; that they sounded the danger signal, and put on the brakes, and had just before that sounded the whistle for the crossing, was clearly proven.

The engine was within thirty feet of deceased when the engineer saw him on the track, and the evidence showed that it was impossible to have stopped or checked the train, even if it had been running at the rate of speed fixed by ordinance, in time to have prevented the injury.

It is evident that if deceased had been looking he could have seen the approaching train, and it has always been held by this court that it is the duty of a person crossing a railroad track to look and listen for trains in order to avoid injury to himself and if he fail to do so and is injured in consequence thereof, he is guilty of contributory negligence. [Boyd v. Railroad, 105 Mo. 371.]

In Watson v. Mound City Ry. Co., 133 Mo. 246, it was held that one who knowingly crosses a railroad track in such close proximity to a moving car as to be struck before he can cross can not, because of his contributory negligence, recover for injuries by him received. [Maxey v. Railroad, 113 Mo. 1.]

The judgment was manifestly for the right party and should be affirmed.

*Gantt, P. J.,* and *Sherwood, J.,* concur.