FRY, Respondent, v. ST. LOUIS TRANSIT COM-
PANY, Appellant.

St. Louis Court of Appeals, March 7, 1905.

1. **INFANTS: Negligence.** The test of a minor's responsibility
for conduct charged to have been negligent, is the caution
usually displayed by ordinary children of his age and capacity.

2. ————. **Street Railways: Contributory Negligence.** Where a
boy nine years of age alighted from a moving street car be-
tween parallel tracks in a place of safety, saw a car approach-
ing on the other track at a distance of five or six feet, and, in
attempting to cross ahead of it, was struck and injured, in an
action for damage for such injuries, it was a question for
the jury whether the boy was guilty of contributory negligence.

3. **STREET RAILWAYS: Negligence: Injury to Passenger Alight-
ing.** Where a passenger alighted from a moving car, but
landed in a safe place between two parallel tracks and in at-
tempting to cross the other track was struck by a car moving
in the opposite direction and injured, when he could have es-
caped the injuries by standing in the place where he landed,
the negligence of the motorman in failing to stop the car, on
which he had been riding, for the purpose of allowing him to
alight, was not the proximate cause of the injury and afforded
no basis for recovery.

4. ————: ————: **Warning of Approaching Car.** Where the evi-
dence showed that the passenger saw the car approaching
while he was in a safe place in time to keep out of the way,
the failure of the motorman of such car to sound a warning
of his approach was not negligence which would afford a
ground for recovery.

5. ————: ————: ————: **Infants.** Though the passenger was
an infant nine years of age, it could not be said that the sound-
ing of the bell would have deterred him from attempting to
cross the track when he was not deterred by seeing the car ap-
proach.

6. ————: ————: **Vigilant Watch.** Where the evidence was con-
flicting as to whether the person injured moved upon the track
when the car was only five or six feet away or whether he was
in view and about to cross when the car was 150 feet away,
it was a question for the jury whether the motorman was guilty
of negligence in failing to keep a vigilant watch.

7. ——: ——: **Excessive Speed: Pleading.** Whether the speed of the colliding car, although no speed ordinance was in evidence, was negligent considering the situation at a crossing, was for the jury.

8. ——: ——: ——: ——. The rate of speed fixed by ordinance may not be lawfully persisted in by street car companies regardless of situations which render slower movements indispensable to the safety of the public.

9. ——: ——: ——: ——. A general averment in the petition of the motorman's failure to use any care to control the car was sufficient to let in evidence showing the car's speed was excessive, there being no objection made either to the pleading or the evidence.

Appeal from St. Louis City Circuit Court.—*Hon. W. B. Douglas,* Judge.

REVERSED AND REMANDED.

*Boyle, Priest & Lehmann, Crawley & Jamison, John T. Gose* for appellant.

(1) The court's refusal of defendant's instruction in the nature of a demurer to the plaintiff's evidence and of the peremptory instruction asked by the appellant at the close of all the evidence was error. For a person to step on a railroad track directly in front of an approaching train and so close to it as to render it impossible to stop the train in time to avoid the injury, is such gross negligence as to preclude a recovery. Moore v. Railway, 176 Mo. 544, 75 S. W. 672; Watson v. Railroad, 133 Mo. 250, 34 S. W. 573; Fanning v. Transit Co., 78 S. W. 62; Reno v. Railroad, 79 S. W. 464; Hook v. Railroad, 162 Mo. 569, 63 S. W. 360; Tanner v. Railroad, 161 Mo. 497, 61 S. W. 826; Van Bach v. Railroad, 171 Mo. 338, 71 S. W. 358; Kelsay v. Railroad, 129 Mo. 372, 30 S. W. 339. (2) The failure to sound a warning or the rate of speed of the car does not affect this case. Kries v. Railway, 148 Mo. 321, 49 S. W. 877; Murphy v. Railway, 153 Mo. 262, 54 S. W. 442; Lien v. Railroad, 79 Mo. App. 475;

Skipton v. Railway, 82 Mo. App. 143; Killian v. Railroad, 86 Mo. App. 473. (3) The most favorable interpretation possible to the plaintiff would be that the injury was the result of the concurrent negligence of both the boy and defendant, and all authorities hold that where the concurrent negligence of both is the proximate cause of the injury there can be no recovery. Ries v. Transit Co., 77 S. W. 734; Nellis on Law of Street Railroads, pp. 383-4.

*A. R. Taylor* for respondent.

A court cannot declare contributory negligence of a child as a matter of law, the rule being that of a child, only such care is to expected as a child of his age, experience and discretion would use under the same or similar circumstances; and as a jury are as well acquainted with the acts, discretion and care a child would use, the court has generally trusted a jury to determine the question. Railroad v. Gladman, 15 Wal. U. S. 401; Railroad v. Sout, 17 Wal. 657; Wharton on Negligence, section 310; Boland v. Railroad, 36 Mo. 484; O'Flaterly v. Railroad, 45 Mo. 70; Anderson v. Railroad, 161 Mo. 425, 61 S. W. 874.

### STATEMENT.

This is an action to recover for the loss of the services of the plaintiff's minor son Walter Fry, and the expense of his medical treatment and nursing. The damages prayed are alleged to have been the result of an accident caused by the negligence of the defendant company's servants in running a trolley car over the boy. The facts of the accident, as narrated by plaintiff's witnesses, were that Walter Fry took passage on a car at Eighteenth and Papin streets to be carried to Ohio and Chouteau avenues. He traveled along Papin street some distance and afterwards on Chouteau avenue to its

intersection with Ohio, where he intended to and did get off. The car slackened speed but did not stop at his alighting point, which was the east crossing of Ohio avenue. He stepped off the rear steps on the north side, and as the car was in motion at the time, the impetus he was under bore him several steps forward, or northwest; but he landed safely and the car went on. Wishing to go south after alighting, when he recovered himself he turned around and "trotted back", as he expressed it, across Chouteau avenue. At that moment another car, which was passing in a direction opposite to the movement of the one he had been traveling in, knocked him down and ran over him. He swore that before he ventured to cross the street and while he was still north of the north track, he looked both east and west but saw no car coming; though he admitted his view was unobstructed. After crossing the north track, and while he was between that track and the south one, on which east bound cars traveled, and along which the car that hurt him came, he again looked and saw that car five or six feet away. He supposed he could get across the track before it would reach him and made the attempt; but was caught on the fender, carried a short distance by it, then rolled off and was run over by the fender and the front wheels. It is in testimony that when he was extricated from under the car, he was between the front and the rear wheels of the front truck. One of his arms was so badly crushed that it had to be amputated. Four, or possibly five, acts of negligence are alleged. The first is that the operatives of the car on which the boy traveled, instead of stopping at the Ohio avenue crossing, only slackened speed, forcing him to step off while the car was in motion. The second, third and fourth specifications of negligence are the failure of the motorman of the car which struck the plaintiff's son to keep a vigilant watch for persons on the crossing, or use any effort to control the car or stop it and avert an injury to the

boy, or to give warning by bell, or otherwise, of the car's approach to the crossing. The fifth act of negligence pleaded, if it be not embraced in those just stated, was non-compliance with the vigilant watch ordinance of the city of St. Louis.

We will copy those specifications of negligence as they are averred in the petition:

"That plaintiff's said son did alight from said car at or near his said destination and after so alighting started southward across Chouteau avenue on the west crossing of said avenues, and whilst said son was so on said crossing, defendant's motorman and conductor in charge of its east bound car, carelessly and negligently, without keeping any watch for persons on said crossing in danger from said car, and without using any care to control said car or stop it and avert injuries to the plaintiff's son, and without giving any warning by bell or otherwise to plaintiff's son of the approach of said car, caused and suffered said car to run upon and crush and drag said son and so injure his left arm and shoulder as to necessitate amputation at or near the shoulder.

"And for another further assignment of negligence the plaintiff avers that at the time of said injuries to his son there was in force within the city of St. Louis an ordinance thereof whereby it was provided that motormen and conductors of street cars should keep a vigilant watch for persons on foot, especially children, either on the track or moving towards it, and upon the first appearance of danger to such child, the car should be stopped within the shortest time and space possible. And plaintiff avers that at the time of said injuries to his son, defendant's conductor and motorman in charge of said car failed to keep such vigilant watch and failed to stop said car and thereby directly contributed to cause said injuries to the plaintiff's son."

The answer set up, besides a general denial, that the injured boy, Walter Fry, carelessly ran on the south track in front of said car which struck him, without

looking for approaching cars, when, by taking that precaution, he could have avoided the collision. Walter testified that he had been going to the grocery store that was his destination that day, every day for a month, sometimes riding on a car and sometimes walking and that he had been in the habit of getting off cars at the same Ohio avenue crossing. He testified that he went slowly across the track, neither running nor walking, "but a kind of a trot," and then said:

"Q. While you were trotting across did you again look west to see if a car was coming before you got on the track? A. Yes.

"Q. Now, at what point was it that you looked west again before you got on the track—before you got on the south track when was the last time you looked west? A. I was pretty near on the track when I looked west again.

"Q. Pretty near on the track? A. Yes.

"Q. Does that mean that you were on the north track— that is, the west bound track—or that you were between the north track, west-bound track and the east-bound track? A. I was between the tracks; I was between the tracks.

"Q. The next time you looked west after you started across you were between the two tracks, then you looked west and you saw this car right on you, didn't you? A. Yes.

"Q. Now, son, why didn't you stop where you were instead of going right in front of that car? A. I tried to make it across to the other side.

"Q. The reason you did not stop was you thought you could get across before it would strike you—that is right, is it not? A. Yes, sir.

"Q. You saw it, and you saw it within four or five, or five or six feet of you, and yet you thought you could get across before it would strike you, isn't that it? A. Yes."

The Court: "Where were you when you saw it the last time?   A.   I was between the tracks.

"Q.   What point between the tracks—that is, between the north track and the south track?   A.   Yes."

There was testimony to prove the car that struck the boy was running fifteen or twenty miles an hour and that no bell was rung as it drew near the crossing.

The motorman's testimony coincided with Walter Fry's and is that Walter was only five or six feet ahead of the car when he first came into the motorman's sight. The latter testified as follows:

"Where was the little boy when you first saw him? A.   He came out of the back, the rear end of the west bound car at this point, and he came across in a little trot, and he stopped about the center of the strip between the tracks.

"Q.   In between the north track and the south track he stopped?   A.   Yes, just for an instant; I was probably five or six feet from him and then he started ahead again.

"Q.   Now, after he stopped and then started across the track, after he started forward again, state whether or not it was possible for you to prevent striking him? A.   I could not; no man living could prevent striking him, and I stopped the car just as quickly as possible."

The case was submitted to the jury on the question of whether the company's servants were negligent in failing to keep a vigilant watch so as to stop the car on the first appearance of danger to the plaintiff's son, or to signal by bell or otherwise the car's approach to the crossing.

The court gave two main instructions at the request of the plaintiff, submitting the theories on which he would be entitled to a verdict.   The first one told the jury, in substance, to return a verdict for him if they found his son was struck by the car while on the crossing and in the exercise of ordinary care, considering his age and discretion, provided they found from the evidence

"that at and before striking plaintiff's son, defendant's motorman on its said car controlling its' motion, failed to keep a vigilant watch for persons on foot, especially children, either on defendant's track or moving toward it and in danger of being struck by said car, or failed to stop said car upon the first appearance of danger to plaintiff's son on defendant's track or moving toward it, within the shortest time and space practicable with the means and appliances at hand and with safety to said car and its passengers, and that such failure to keep such vigilant watch and stop said car, directly, contributed to cause said car to so strike and injure the plaintiff's son."

The second instruction given for the plaintiff directed a verdict for him if the jury found that as the car approached the crossing, no bell or signal of its approach was given, that the failure to give it contributed to cause the accident and that in such failure defendant's motorman and conductor did not exercise ordinary care, while the boy was guilty of no negligent conduct, or none that caused the injury.

There was a verdict for the plaintiff and the defendant appealed.

GOODE, J. (after stating the facts).—The injured boy's statement that when he was between the two parallel tracks and in a position of perfect safety, he saw the east bound car advancing on the south track only five or six feet away, and thinking he could cross before it reached him, endeavored to do so, is corroborated by other testimony and contradicted by none. So it may be assumed that the accident happened in that way. If it did and the boy is to be held as strictly responsible for the consequences of his act as a grown person would be, we would have to defeat the plaintiff's action on the ground that his son's negligence wholly or partly caused the casualty. No inference can be deduced from the stated facts which would not embrace the negligence of the

boy as a concurring, if not the sole cause, of the accident, were his conduct to be regarded with no more indulgence than is shown to that of individuals whose maturity of discretion is beyond doubt.    To go on a railway track in front of a near and swiftly advancing car is so rash an act that courts refuse redress for losses or injuries caused thereby, if the injured person was of full legal accountability.    Peterson v. Railway, 156 Mo. 552, 57 S. W. 709.    We are urged to enforce that rule in this case, notwithstanding the plaintiff's son was only nine years old or less, when hurt, and perhaps precedents for such a ruling have been cited which may be argued plausibly to be in point.    The courts are in accord regarding the principles which should control in determining whether a child who was the victim of an accident, was guilty of conduct which should be charged against it as negligence that contributed to the accident.    It is true that nonsuits have been entered on appeals in litigation over such occurrences on the ground that the evidence dispelled all doubts concerning the full capacity of the injured minors, when they were about the age of Walter Fry.    But in cases where the evidence did not put the question of capacity beyond controversy either way, the doctrine generally, if not universally, held is that the defense of contributory negligence should be considered by the jury, and determined by the test of whether the child used as much care as is commonly shown by children of like years and discretion in like situations.    The standard of conduct that is applied to individuals of full age and mature judgment and experience, might be misleading on the question of whether or not a youth's conduct was careful or careless; for the reason that children, especially young ones, are, as every one knows, hasty and thoughtless and less likely to consider consequences before acting than are older persons, who have been taught caution by varied experiences.    It is the unreflecting, impulsive character of children as well as their lack of judgment, that the law makes al-

lowance for in prescribing the measure of their responsibility. If he can be brought to think about it deliberately, a child may be able to appreciate, as well as a grown person, a threatening danger which the latter would shun and the former rush into heedlessly. It is obviously unreasonable and unjust to exact of boys in early youth as high a degree of care as we do of mature men; for boys have not been disciplined by experience to exercise judgment, deliberation and self-restraint as men have. But it is reasonable and just to require of a lad the degree of care usually observed by lads of his age and capacity; for this he can observe. As the law frames its rules of conduct according to the teaching of experience, its test of a minor's responsibility for conduct charged to have been negligent, is the caution usually displayed by ordinary children of his age and capacity. McCarthy v. Railway, 92 Mo. 506, 4 S. W. 516; Williams v. Railway, 96 Mo. 275, 9 S. W. 573; Eswin v. Railway, Id. 290, 9 S. W. 577; Burger v. Railway, 112 Mo. 238, 20 S. W. 439; Schmitz v. Railway, 119 Mo. 256, 24 S. W. 472. Exceptional cases, in which the inquiry of whether or not injured minors were culpably negligent was held to be for the court's instead of the jury's decision, do not impugn the general rule that the question is for the jury when different inferences are fairly deducible from the evidence; a rule which has been many times declared by the appellate courts of this State. Anderson v. Terminal Railway, 161 Mo. 411, 61 S. W. 874, 81 Mo. App. 116; Day v. Railway, 81 Mo. App. 471. The precise point for decision on this branch of the present case is whether, on the evidence before us, we can say Walter Fry was shown, beyond fair inference to the contrary, to have fallen short of the care ordinarily shown by boys of his age and capacity, when he darted on the track in front of the approaching car; or whether that matter was properly left to the jury. Walter was between eight and nine years old when hurt, appears to have been of average intelligence and was in

the habit of riding on street cars. If he had stopped to think, maybe he would have realized that it was dangerous to try to cross the track when he did. But instead of halting at sight of the car, he continued to trot forward, assuming that he could get across the track in safety. When we observe the temerity with which city boys move in and out among street cars, we cannot declare this boy's conduct so manifestly fell below the care usually taken by other boys of his age that the issue should have been withdrawn from the jury. We hold that the defense of contributory negligence was rightly submitted to the jury and that the trial court's ruling in that regard was according to the pronounced weight of authority in this State. Boland v. Railway, 36 Mo. 484; Mescheck v. Id., 71 Mo. 276; Winters v. Id., 99 Mo. 512, 12 S. W. 652; Van Natta v. Id., 133 Mo. 13, 34 S. W. 505; Jett v. Id., 178 Mo. 738, 77 S. W. Rep. 739; Dunn v. Id., 21 Mo. App. 188; Kennedy v. Id., 43 Mo. App. 1; Riley v. Id., 68 Mo. App. 653.

But it was not enough to warrant a verdict against the defendant for the jury to find plaintiff's son was not negligent in view of his age and discretion; it was necessary for them to find besides, that defendant's servants, operating the car, were guilty of some negligence which caused the casualty. Neither was it sufficient to constitute a case for the jury that the court could not say the inference was irresistible that plaintiff's son was guilty of contributory negligence. There must have been evidence to show the defendant's servants were guilty of some neglect that wholly, or in part, led to the accident. However young or immature the boy may have been, no cause of action was made out unless the carmen were shown to have omitted a duty they owed him, with a dire result. In several of the cases last cited the facts were quite analogous to, if not identical with, those before us, and the railroad companies were exonerated from liability, not on the score of the injured person's contributory negligence, which, as said above,

was held, in view of his minority, to be a matter for the jury, but on the ground that no negligence on the part of the car operatives was proved.    Therefore we will examine the evidence in connection with the several as-signments of error, to see if any of them rests on sub-stantial proof.

The fact that the car on which Walter Fry rode to his alighting place was not stopped for him to get off, had nothing to do with his subsequent collision with another car and afforded no basis for a verdict against the railroad company, as the court below properly charged.    He got off the car he was riding on safely and the neglect to stop it did no harm.

The next charge of negligence is the alleged failure to give warning, by sounding the bell or otherwise, of the approach of the car to the crossing.    There was testi-mony sufficient to raise an issue of fact as to whether the signal was given or not.    It is true that testimony was of a negative character, as the witnesses who spoke on the subject simply said they heard no signal.    But they were so near the scene that probably they would have heard one if it had been sounded; and their testimony was for the consideration of the jury, if the issue of whether a signal was given was important.    Murray v. Railway, 176 Mo. 183, 75 S. W. 611.    But that issue was immaterial; because the failure to sound the bell as the car neared the crossing cannot be accepted as the prox-imate cause of the accident.    The boy was apprised of the car's approach by actually seeing it while he was in a safe position, before he advanced into one of danger, and when the situation in no way tended to force him to go forward.    He went forward because he believed he could cross in safety.    He testified positively that when he was between the two tracks he saw the car five or six feet away; and, therefore, he needed no warning of its proximity.    The law is that omitting to give notice of the approach of an engine or car cannot be availed of as a ground of recovery by a person injured by the

vehicle, if he knew of its approach by his own eyesight in time to keep out of the way. Murray v. Railroad, supra. Killiam v. Railway, 86 Mo. App. 473. The theory might be advanced that if the bell had been rung it would have warned the boy of the car's approach sooner than seeing it did, and that he might then have refrained from going on the track until it had passed; and this is the only way we can think of in which failing to ring the bell may have contributed to the accident. But it is plain that such a theory of the boy's possible conduct had the bell been rung is purely conjectural; a surmise rather than an inference deducible from the known facts; a spontaneous suggestion of the mind as to the course that might have been taken, but which the evidence has no tendency to prove would have been taken. And it is even an improbable suggestion; for it is improbable that the boy would have been deterred from attempting to cross by hearing the bell when the car was distant, if he was not deterred by seeing the car itself when it was near. The Supreme Court considered and rejected as fanciful a similar theory of recovery in Barkley v. Railroad, 96 Mo. 367, 9 S. W. 793. The motorman's neglecting to ring the bell was not connected with the casualty nor the cause of it near or remote. Like the failure to stop the car the boy rode to the crossing on, for him to alight, it resulted in no mischief. But the second instruction given at the instance of the plaintiff authorized the jury to return a verdict in plaintiff's favor on the finding that no signal of the car's approach to the crossing, by bell or otherwise, was given. As the evidence shows without a discrepancy, that failure to signal had nothing to do with the accident, the instruction was erroneous and prejudicial.

The first instruction granted on the plaintiff's request told the jury he ought to have a verdict if they found the motorman was negligent in failing to keep vigilant watch ahead, or to stop his car in the shortest

time and space practicable with the appliances at hand and considering the safety of the passengers, on the first appearance of danger to plaintiff's son on the track or moving toward it; if they found, too, that such negligence caused the accident. The instruction was correct in form, but did the evidence authorize it? The testimony of most of the witnesses inclines to establish that the misfortune resulted from the boy's running in front of the car when it was so close to him that it could not be stopped in time to save him, and that the carmen were to blame only in not reducing speed before reaching the crossing. The motorman swore his first intimation of an impending accident, or knowledge that the boy was on or about the crossing, came when he saw him (Walter Fry) emerge from behind the west bound car, a few feet ahead of the motorman's car, between the tracks and advancing toward the south track; and that then no one on earth could have checked the car before reaching him. There was evidence tending to cast doubt on this statement given by a witness who was sitting in the car on the north side and near the front. She swore to seeing the boy on the north track and about to cross when the car was one hundred and fifty feet from the crossing. It might be inferred from her evidence and perhaps from some circumstances, that the motorman could have averted the accident, if he had been attentive and prompt. A question was presented for the jury's decision as to whether he was negligent in his watch, or in trying to stop the car.

There was other evidence from which the jury might well have found the car crew were negligent, and in a way that caused the accident. It was in testimony that the colliding car was running at a speed which, considering it was passing a crossing, and one where another car had just discharged passengers, might justly be found to have been excessive and to show negligent operation. The municipal ordinance limiting the speed of.

street cars was neither pleaded nor put in evidence. Nevertheless, the excessive speed of the car was a proper issue; for if the ordinance had been introduced and the car shown to have been running in conformity to it, there would have been a question for the jury to answer as to whether such a velocity at a crossing where passengers were leaving another car, was permissible or negligent. The ordinance rate may not be lawfully persisted in regardless of situations which render a slower movement indispensable to the safety of the public. Holden v. Railroad, 177 Mo. 456, 76 S. W. 973. There is no definite allegation in the plaintiff's petition charging that the car was under an excessive and careless velocity. But testimony on the subject was put in, and was properly admitted under the averment of the motorman's failure to use any care to control the car. This averment should have charged excessive speed more directly; but as an allegation of negligence at common law, it was broad enough to let in evidence concerning the car's speed, as no objection was made to either the pleading or the evidence. Testimony on the issue was introduced by the plaintiff, but it was left out of the instructions, being nowhere submitted as a basis for a verdict in plaintiff's favor. It was, of course, requisite, in order to justify a recovery by the plaintiff, that the evidence on the point should tend to prove, not only negligent speed, but that the casualty would have been avoided had the speed been careful and proper, all the facts considered. Jackson v. Railroad, 157 Mo. 621, 58 S. W. 32; Molyneux v. Railroad, 81 Mo. App. 25. It cannot be declared as a matter of law that the accident would have happened in any event. That was for the jury to determine under appropriate advice from the court. It strikes us as entirely possible and by no means improbable, that if the car's movement had been brought down to a rate which was prudent in the opinion of fair-minded men, as it drew near the crossing and the discharging car, the casualty could and would have

been averted.   Rushing street cars over crossings and
while passengers are disembarking from other cars, is
a prolific source of serious and fatal accidents, and it
behooves street car companies to do all that careful and
humane men can to diminish this menace.

The law of this case will be made clearer by an
analysis of the precedents we have cited as containing
analogous facts.   In the Boland case, the plaintiff's
daughter was run over and killed by a street car while
walking across Market street in St. Louis.   The testi-
mony showed the child was only three or four feet from
the car when the attention of the driver was attracted
to it by the warning shout of a nearby pedestrian.   It
appeared the driver stopped as soon as he could after he
knew of the child's danger,  and  did not appear that
he was negligent in not seeing it sooner, as he was oc-
cupied at the time in avoiding a collision with a wagon.
After approving  the doctrine that a child of immature
years is less responsible for  negligent  conduct  than  a
maturer person, the court said:

"Now, by reference to the evidence, we think it
clear there was no negligence shown by defendants or
their agents.   The attention of the driver of the car was
directed to another point of the street, where he antici-
pated danger.   He was driving slowly and cautiously,
with his knee against the dashboard of the car, and his
hand on the brake, to be ready in an instant to stop the
car, and prevent damage in case the threatened collision
took place.   There is nothing whatever to show that he
knew the child was approaching the car, or had any
reason to apprehend the child was there.   The witness
states that the child was from three to five feet from the
car when first discovered, and the alarm given, going
directly ahead, and at rather a rapid rate.   The driver
stopped as soon as he could, but not until after the fatal
accident had happened."

In the present case, as opposed to that one, there

was some proof of negligent speed which might have been submitted as a basis for a verdict.

In Mescheck v. Railroad, 71 Mo., supra, a horse car was moving at a moderate speed down a slight grade, when the driver saw a child about six feet ahead of the mules and four feet from the track, running toward it. The driver exerted himself to stop the mules, but the child got on the track and was run over and crushed. The judgment for the plaintiff was reversed because there was no proof of any negligence on the part of the driver. It was said he could be convicted of negligence only on the hypothesis that he did not begin to stop the car as soon as he ought, and that there was no positive proof he saw the boy until he shouted to him; but even if he saw him when on the sidewalk he had no right to suppose he would undertake to cross the street.

In Dunn v. Railroad, 21 Mo. App. 188, plaintiff's son, a boy nine years old, got off one horse car, then turned around and started to run eastward across the street, on which were two street railway tracks, and a car coming from the opposite direction ran over him. That car was moving at an ordinary trot down a slight grade. It was ruled that the question of the boy's contributory negligence, considering his years, was for the jury; but that as there was no substantial evidence of negligence on the part of the driver of the car that hurt him, a recovery should be denied as a matter of law. That case was quite similar to the one at bar, leaving out of view the question of speed.

In Kennedy v. Railroad, 43 Mo. App., supra, the plaintiff's daughter, a girl ten years of age, was hurt in running across Broadway in St. Louis. She emerged from behind an ice wagon in front of a mule car and was run over and hurt. In that case the car stopped after the front wheel passed over the girl. Just the distance away the mules were when the girl got on the track is not stated; but the court evidently thought the driver

had no time to stop before reaching her. Excessive speed did not enter into the case.

In O'Flaherty v. Railroad, 45 Mo. 70, the opinion was written by Judge WAGNER, who also wrote the opinion in the Boland case. Different results were reached in the two cases, and the company was held liable in the O'Flaherty case because the car which hurt the child was traveling at a rapid speed and its driver, instead of looking ahead and being ready to avoid accidents, was looking behind him and holding to the dashboard in order to maintain himself on the platform. This was held to be gross negligence.

In the Van Natta case, 133 Mo., supra, the injured boy got off a car, ran behind it and was struck by another on a parallel track. Unlawful speed was averred. The judgment for the plaintiff was reversed for errors in the instructions, but the case appears to have been held to be one for the jury on the issue of excessive speed.

In the Jett case, 77 S. W. supra, there was testimony to show the child that was killed was walking with her brother along a railway track for some distance ahead of the car and in plain view of the motorman. It was held that while the children were negligent in walking on the track without looking for a car, and while the motorman had a right to presume, in the first instance, that they would see it and get out of the way, yet it was his duty to be on constant watch and in the event it became evident that they were not observing care, he should have checked his car to avoid striking them; and it was a question for the jury whether he complied with his duty in this regard.

In Riley v. Railroad, 68 Mo. App., supra, the injured boy was frightened by steam that escaped from a locomotive on one track and ran along another track on which an engine was moving and was struck. The undisputed evidence showed that the engine which did the harm was running at a speed of three or four miles an hour and

that it could have been stopped within thirty feet. There was testimony that the plaintiff ran ahead of it sixty or seventy feet; and on that showing it was manifestly a question for the jury whether the engineer was guilty of negligently and wantonly running him down.

Our examination of the foregoing cases discloses that in those where the evidence was held to be for the jury, the defendant's servants were shown to be remiss, either in running at an unlawful speed, or in failing to take proper measures to prevent striking the injured party after they saw his danger; whereas, in the cases where the plaintiffs were nonsuited, undue speed was not relied on for a verdict and it was clear that the injured children got on the tracks so close to the approaching cars or engines, that it was impossible to save them.

The judgment is reversed and the cause remanded.

All concur.